# Illinois Official Reports

## Appellate Court

---

### *People v. Lobdell*, 2017 IL App (3d) 150074

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKY LEE LOBDELL, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0074 |
| Filed | July 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-CF-767; the Hon. Stephen A. Kouri, and the Hon. Katherine S. Gorman, Judges, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Bryon S. Kohut, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justice Lytton concurred in the judgment and opinion.<br>Justice McDade dissented, with opinion. |

¶ 1      Defendant, Ricky Lee Lobdell, appeals his criminal sexual assault convictions, arguing that the circuit court erred by (1) admitting evidence of his prior conviction for rape, (2) admitting evidence of defendant's convictions for home invasion and residential burglary to show propensity, and (3) failing to address defendant's *pro se* posttrial allegations of ineffective assistance of counsel. We affirm and remand.

¶ 2                                                         FACTS

¶ 3      Defendant was charged with three counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2012)). Two of the counts carried a mandatory life sentence based on defendant's past conviction for rape.

¶ 4      The State filed a "Notice of Intent to Use Evidence of Defendant's Other Crimes" pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) in order to use defendant's past convictions for rape, home invasion, and residential burglary "as substantive proof of his propensity to commit the charged sexual offense." See 725 ILCS 5/115-7.3 (West 2012). A hearing was held, and the court took the matter under advisement. The court decided to allow the evidence, stating in a written order:

> "The State seeks to introduce evidence of a prior crime which took place October 24, 1982, almost 30 years prior to the alleged sexual assault herein. In the earlier case, Peoria County case number 82-CF-4582, Defendant was convicted of a home invasion and brutal sexual assault of a 62-year-old woman. According to the Grand Jury testimony submitted by the State for the Court to consider, Defendant ripped off the victim's clothes, slapped and choked her, threatened to cut her with scissors, cut off her hair and threatened to 'cut you bald', and forced intercourse upon her. After he was finished having sex with her, he called his partner into the room and stated, 'It's your turn.' His partner proceeded to force anal sex upon the terrified, elderly 62-year-old victim. Defendant was convicted in that case and served roughly 25 years of a 50-year sentence.
>
> In the instant case, Defendant is charged with criminal sexual assault. According to the Grand Jury testimony Defendant, while wearing his parole ankle monitor, is accused of brutally raping a 21-year-old in front of her newborn and 2-year-old child. Immediately prior to the sexual assault, the Defendant allegedly stated, 'I ain't got time for this shit,' as his [ankle] monitor was set to alert if he wasn't back to his house within a short period of time. He shoved the victim to the mattress on the floor, held her down, pulled her clothes off, and sexually assaulted her. When she screamed, her 2-year-old child approached while crying. The Defendant allegedly shoved the child away with his foot, all while sexually assaulting the victim. After he completed his sexual act, he fled out the door.
>
> In assessing whether the two alleged incidences are so similar as to constitute evidence of a propensity to commit criminal sexual assault, the Court is drawn to one overriding circumstance which is pervasive in both incidences. A gang criminal sexual assault of a 62-year-old elderly woman, including forced anal sex, and the criminal sexual assault of a 21-year-old while shoving away her crying 2-year-old child,

contains the same overriding circumstance; namely, extreme brazenness on the part of the Defendant. 'Brazenness' is defined as 'behavior marked by audacity, bold defiance and lack of shame'. In this Court's view, the criminal sexual assault of a member of the opposite sex, regardless of age, under the brazen circumstances in which these two assaults occurred, is strong evidence of a propensity on the part of the Defendant to commit such assaults on members of the opposite sex.

Under 725 ILCS 5/115-7.3(c), in weighing the probative value of the evidence against undue prejudice, the Court may consider proximity in time of the two incidences, degree of factual similarity and 'other relevant facts and circumstances'. The Defendant argues the earlier offense should be excluded as factually dissimilar due to it occurring over 30 years ago, as well as other dissimilar circumstances such as time of day and age of the alleged victims. The Court is not persuaded by any of these distinctions. In particular, the time factor is minimized in that Defendant was in prison for most of that period. Stating the obvious, Defendant therefore had no opportunity to show propensity to commit sexual assault on the opposite sex. Moreover, the case law clearly indicates lengthy time periods in excess of 15 to 20 years are admissible under the statute. *People v. Donoho*, 204 Ill. 2d 159 (2003). The other so-called dissimilar circumstances do not override the similar circumstances noted above.

By the very nature of the described subject acts, the prior conduct will be prejudicial. The legislature has seen fit to allow admission of such acts if it is not unduly prejudicial. This Court finds the earlier act is not. It will therefore be allowed into evidence provided the evidence presented is otherwise admissible."[1]

¶ 5 Defendant filed a motion to reconsider, which was denied. He waived his right to a jury trial and proceeded to a bench trial.

¶ 6 B.B. testified that on Saturday, July 14, 2012, she lived with her husband and children. She was four months pregnant. That day she walked two blocks from her apartment to the store with her children between 12 to 1 p.m. and saw defendant in his car. He drove up next to B.B. and asked if she wanted a ride. When she refused, he offered her a cigarette, which she also refused. He then drove away. When she arrived at the store, defendant was parked in the parking lot. He offered B.B. money, which she rejected. After leaving the store, B.B. went home and did not see defendant again that day.

¶ 7 The next day (Sunday, July 15, 2012), defendant knocked on B.B.'s door. She did not know how he knew where she lived, as she did not give him her address and did not see him follow her home the previous day. B.B. opened the door. She saw that defendant had a cell phone, and she asked if she could use it. B.B. did not have a phone and had tried to use a phone earlier in the day. Defendant let her use his phone, and she called her grandmother. One of her children started to cry, so she finished her phone call, returned the phone to defendant, and thanked him. She did not have any other conversation with defendant. She then shut the door and went upstairs to her apartment to take care of the baby. She did not lock the door.

¶ 8 While B.B. was upstairs, defendant came into her apartment. She had not invited him in. He grabbed B.B. around the waist and said, "I just got out of jail for murder." She was bent

---

[1]We note that the grand jury transcripts and police reports from defendant's earlier case are not in the record. Therefore, we rely on the facts as stated in the court's recitation in this order and the brief description in the previous appellate case. See *People v. Lobdell*, 121 Ill. App. 3d 248 (1983).

down and saw his ankle monitor. After he grabbed her, defendant said, "I don't have time for this shit." Defendant then pulled her into the bedroom, pushed her onto a mattress on the floor, and pinned her down. B.B. asked him to stop. B.B.'s two-year-old daughter came in and started pulling at B.B. and telling defendant to get off her. Defendant pushed the child away. The child continued to come back and tried to help B.B., but defendant kept pushing her. Defendant held both of B.B.'s arms above her head with one of his hands. With his other hand, defendant removed B.B.'s pants. His shorts were already removed. Defendant then penetrated her vagina with his penis. She told him to stop several times. She could wiggle away a little, but she stopped struggling because she did not want him to hurt her children. B.B. believed that defendant ejaculated inside of her. He did not wear a condom. B.B. stated that defendant did not hit her. When he was finished, he ran out the door while pulling his shorts up.

¶ 9        B.B. called 911 on her husband's phone. Her husband's phone did not have regular service, but was able to make emergency phone calls. B.B. spoke to the police and identified defendant in a photographic lineup.

¶ 10       Stephanie Clark testified that she was a sexual assault nurse examiner at OSF in the emergency room. B.B. came in on July 15, 2012, around 9 p.m. B.B. was fidgety, had difficulty making eye contact, and laughed nervously, but was talkative and appropriate. Clark performed both an internal and external examination of B.B. Externally, B.B. did not have any injuries or bruising. When performing the internal examination, Clark said: "I found a lot of white really sticky thick pearl-kind-of-like substance. I also found at her cervix there was some bruising—well, redness, which [was] an early stage of a bruise at eight o'clock and six o'clock." Clark then performed an Illinois State Police sexual assault evidence collection kit. In doing so, Clark stated:

> "We do *** fingernail scrapings or swabbings. We do hair collection. We do DNA. We do a finger prick on the patient so we can do their sample DNA. We also collect all swabs from any area where she tells me she's been kissed or bitten or any—so I guess in her case, I did like her right neck. We do her mouth, some oral swabs. And we do the internal and external vaginal swabs."

¶ 11       The parties stipulated that a buccal swab was taken from defendant and DNA analysis was performed on the swab and the sperm found in B.B. The DNA matched defendant and did not match B.B.'s husband.

¶ 12       Shawn Curry testified that he was a detective with the Peoria police department in the violent crimes unit. He spoke with B.B. after the incident and had her view a photographic lineup. She identified the photograph of defendant. Curry questioned defendant about his whereabouts on the day of the incident and the preceding day. Defendant said on Saturday:

> "he had a sex assault class he attended, and then he went home. And then initially he said on Sunday he got up, went to church. After church—got out shortly after noon—he went down Farmington Road to Sterling to his girlfriend's house ***. After being at her house he said he went back to his residence on Center Street, and that's where he stayed."

Defendant repeatedly denied being in the area of B.B.'s home that weekend.

¶ 13       After Curry explained to defendant why he was being questioned, defendant "changed his story," stating that he was in the area on Sunday.

"He stated that he was driving around the area. He said he got flagged down by [B.B.], and then at that point he got out *** started talking to her. She was on the side of her house on her front porch. And then at that point he stated that they went up inside her upstairs apartment where she then pulled down her pants and asked for sex from behind. He reported to [Curry] that he didn't want to have sex from behind so he laid her down on a mattress and then proceeded to have sex with her then."

Prior to having sexual intercourse, defendant told Curry that B.B. stated, "you're going to like pregnant pussy." Curry had not told defendant B.B. was pregnant. Defendant told Curry that he wore a condom. Curry pressed defendant on his use of a condom, stating:

"If you wore [a] condom there would be no semen and that a rape kit had been done. At that point [defendant] advised that the condom had broke during intercourse. Then [Curry] asked him what he did with the condom and the wrapper. ***. *** [Curry] explained to [defendant] that if he had actually worn a condom there [would have been a] condom in the garbage. [There] was no condom inside the apartment nor was there a wrapper to a condom."

Defendant "changed his story again and said he had not worn a condom." Defendant then said that he was also in the area on Friday. He had been driving to work when B.B. flagged him down to ask for a cigarette. Defendant said he gave her a cigarette, gave her $10 for her children, and then drove away.

¶ 14        In finding defendant guilty, the court stated:

"[T]here is no question that [defendant] sexually penetrated [B.B.] Did he use force or threat of force? [Defendant] let himself into her home where her three children were present. He grabbed her and pulled her into the bedroom. At some point she realized he was wearing an ankle bracelet having been released from prison for murder. Put her down on the bed. Her children were there. He pushed one of them away and pinned her on the bed.

    The Court has considered [B.B.'s] uncertainty concerning details that do not relate to whether [defendant] used force or threat of force, and finds that [B.B.] is credible, particularly when coupled with the corroborating evidence as testified by Officer Curry.

    The Court finds that [defendant] did use force or threat of force, and the fact that [B.B.'s] children were home and present made [B.B.] that much more vulnerable to the threat or the use of force. And even if the Court does not consider [defendant's prior convictions], I—the Court finds that the State has met its burden and finds [defendant] guilty on all three counts."

¶ 15        Before the sentencing hearing, defendant wrote a letter to the court, stating, *inter alia*:

"[U]pon the officers arresting me they were in violation of Amendment 4 and 5 of the United States Constitution; also the Illinois Constitution. The Arresting officers did not have a warrant to step foot onto my father[']s property nor did they have consent, as well as no arrest warrant. My family and I were sitting in my father[']s fenced in back yard with a locked gate, when the officers came up to the gate they ask us our names and when I told them my name the officers reached over the gate unlocking it and step through onto my father[']s property and told me I was under arrest, I asked to see the warrants, they told me they had no warrant, and placed my hands behind my back and

hand cuffs on my wrist, and took me to the Peoria county police depart., never reading me my rights. But instead told me it was over an ankle monitor violation, why [my attorney] never mentioned this during trial I do not know, that[']s why I am mentioning it now [Y]our [H]onor."

¶ 16    Defendant read the letter to the court at sentencing. Defendant was sentenced to natural life imprisonment.

¶ 17                                              ANALYSIS
¶ 18                                    I. Prior Rape Conviction
¶ 19    Defendant first argues that the court erred by admitting evidence of his prior conviction for rape. Specifically, defendant argues that the prejudicial effect of his rape conviction substantially outweighed its probative value, and therefore, to allow the evidence was an abuse of discretion. Because we find that the court appropriately weighed the proximity in time, factual similarity, and relevant circumstances between the two offenses, we find that the court did not abuse its discretion.

¶ 20    Evidence of a defendant's past crimes is generally inadmissible to show the defendant's propensity to commit the charged crime. *Donoho*, 204 Ill. 2d at 170. Such a rule insulates against the jury convicting a defendant because he or she is a bad person. *Id.* However, section 115-7.3(a)(1) of the Code provides an exception to this rule when a defendant is accused of a sex offense, including criminal sexual assault. 725 ILCS 5/115-7.3(a)(1) (West 2012). In such instances, evidence of a defendant's commission of a past sex offense, including rape, may be used to show the defendant's propensity if the prejudicial effect does not substantially outweigh the probative value. *Donoho*, 204 Ill. 2d at 182-83. Section 115-7.3 states that, in making this determination, the court should weigh: "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2012). We will not reverse the circuit court's decision to admit other-crimes evidence unless we find that the court abused its discretion. *People v. Ward*, 2011 IL 108690, ¶ 21. We will only find an abuse of discretion if the circuit court's evaluation was "arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court." (Internal quotation marks omitted.) *Donoho*, 204 Ill. 2d at 182.

¶ 21    First, when considering the proximity in time between the charged offense and the past conviction, we consider the issue on a case-by-case basis. *Id.* at 183. Courts have found other-crimes evidence over 20 years old admissible because it was sufficiently credible and probative. *People v. Davis*, 260 Ill. App. 3d 176, 192 (1994); *Donoho*, 204 Ill. 2d at 184 (12 to 15 years had elapsed between the offenses); *People v. Smith*, 2015 IL App (4th) 130205, ¶ 29 (12 to 18 years had elapsed between the offenses).

¶ 22    Here, defendant's prior rape conviction occurred almost 30 years before the criminal sexual assault in this case. However, as the circuit court pointed out, defendant was in prison for most of that time, during which he would have been unable "to show propensity to commit sexual assault on the opposite sex." In fact, defendant was only out of prison for less than one year before he committed the offense in the instant case. While normally the passage of 30 years since the prior offense would lessen the probative value (see *Donoho*, 204 Ill. 2d at 184), this is mitigated, here, where defendant only had the opportunity to commit another such offense in 1 out of the preceding 30 years.

¶ 23 Second, the court must consider "the degree of factual similarity to the charged or predicate offense." 725 ILCS 5/115-7.3(c)(2) (West 2012). Other-crimes evidence must have " 'some threshold similarity to the crime charged.' " *Donoho*, 204 Ill. 2d at 184 (quoting *People v. Bartall*, 98 Ill. 2d 294, 310 (1983)). The greater the similarities between the charged offense and the other-crimes evidence, the greater the probative value. *Id.* However, to show propensity, " 'mere general areas of similarity will suffice' to support admissibility." *Id.* (quoting *People v. Illgen*, 145 Ill. 2d 353, 373 (1991)).

¶ 24 The similarities between the instant case and defendant's prior rape conviction are significant and include (1) uninvited entrance into the victims' home, (2) the use of force, (3) nonconsensual sex, and (4) adult women victims.

¶ 25 Defendant points out the differences between the two offenses, including the race and age of the victims, the severity of the force used, the manner in which defendant removed the victims' clothing, the manner of entrance, the familiarity with the victim, the people present at the time, and the concurrent crimes committed. Initially, we note that the differences set out by defendant involve subtle factual distinctions in which defendant carried out the elements of criminal sexual assault. The fact remains, however, that the instant case and defendant's prior rape conviction both involved the same fundamental blueprint. Moreover, "[t]he existence of some differences between the prior offense and the current charge does not defeat admissibility because no two independent crimes are identical." *Id.* at 185. We do not believe that these differences are significant. Instead, we find the "differences are a product of defendant's access" and opportunity. *Id.* at 186. Further, though the differences could lessen the probative value, they do not outweigh the general areas of similarity necessary for admission. See *id.* at 184.

¶ 26 Third, in weighing the probative value and prejudicial effect, the court may consider any other facts and/or circumstances. Here, the court noted the "extreme brazenness" that defendant exhibited in each of these crimes, defining brazenness as "behavior marked by audacity, bold defiance and lack of shame." The court pointed to the fact that the prior offense included "[a] gang criminal sexual assault of a 62-year-old elderly woman, including forced anal sex" and the current offense included "the criminal sexual assault of a 21-year-old while shoving away her crying 2-year-old child."

¶ 27 Considering the above, we cannot say that the circuit court's decision to admit the rape conviction was an abuse of discretion. Although 30 years had passed, defendant had only been out of prison for less than 1 year before committing the offense. That, compounded with the factual similarities marked with defendant's brazenness, was sufficient to justify admission of the evidence of the prior rape conviction. Further, we note that the court exercised caution in considering the admissibility of the other-crimes evidence. See *id.* at 186. The court's written order reveals that it engaged "in a meaningful assessment of the probative value versus the prejudicial impact of the evidence." *Id.*

¶ 28 II. Prior Convictions for Home Invasion and Residential Burglary

¶ 29 Defendant next argues that the circuit court erred by admitting evidence of defendant's convictions for home invasion and residential burglary to show propensity. Because we find, as the circuit court did, that there was enough evidence to convict defendant without considering these past convictions, we need not consider defendant's argument.

¶ 30	The parties did not dispute that B.B. and defendant had sexual intercourse. Therefore, the only question was whether their sexual interaction was consensual or by defendant's use of force. B.B. testified that defendant knocked on her door, and she answered and asked to use his cell phone. After using his cell phone, she returned it, closed the door, and went upstairs into her apartment. She did not lock the door. She was tending to her crying child when defendant came into her apartment and grabbed her around the waist. B.B. said that defendant pushed her onto the mattress, pinned her down, held her arms above her head, and removed her pants. When B.B.'s child came in, defendant pushed the child away. He then had sexual intercourse with B.B. without her consent. Detective Curry further testified that he had questioned defendant, who repeatedly told Curry he had not been anywhere near B.B.'s residence. It was only once Curry told defendant why he was being questioned that defendant said he had sexual intercourse with B.B., though he claimed it was consensual. Defendant further stated he had worn a condom. Once Curry told defendant that his semen had been found, defendant said the condom had broke. Defendant again changed his story to say that he had not worn a condom after Curry said no condom or wrapper was found. The court expressly found B.B. credible, "particularly when coupled with the corroborating evidence as testified by Officer Curry." We defer to the credibility findings of the circuit court. *People v. Williams*, 2013 IL App (1st) 111116, ¶ 76. "[T]he testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). The credible testimony of B.B. and Curry, coupled with defendant's prior conviction for rape (*supra* ¶ 27), was enough to convict defendant, even without the evidence of the prior home invasion and residential burglary.

¶ 31	III. Posttrial Ineffective Assistance of Counsel Claim

¶ 32	Lastly, defendant argues that the case should be remanded so the circuit court can address defendant's *pro se* posttrial claim of ineffective assistance of counsel. Because we find that defendant's letter to the court expressed a clear claim of ineffective assistance of counsel under *People v. Ayres*, 2017 IL 120071, we agree.

¶ 33	A defendant raising a *pro se* posttrial claim of ineffective assistance of counsel is entitled to have those claims heard by the circuit court. *People v. Krankel*, 102 Ill. 2d 181 (1984). The process for hearing those claims contains two steps: (1) the circuit court makes a preliminary inquiry to examine the factual basis of the defendant's claim and (2) if the allegations show "possible neglect of the case," new counsel is appointed to represent the defendant in a full hearing on his *pro se* claims. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). In order to trigger a preliminary inquiry, " '[a] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention' [citations], and thus, a defendant is not required to file a written motion [citation] but may raise the issue orally [citation] or through a letter or note to the court [citation]." *Ayres*, 2017 IL 120071, ¶ 11 (quoting *Moore*, 207 Ill. 2d at 79). "In making the inquiry, 'some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim.' " *Id.* ¶ 12 (quoting *People v. Jolly*, 2014 IL 117142, ¶ 30). The circuit court may address the contentions with counsel and the defendant and may "make its determination based on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations." *Id.*

¶ 34    The parties do not dispute that no preliminary inquiry was made here. Therefore, the question on review is whether the circuit court erred in failing to conduct a preliminary inquiry to examine defendant's claim.

¶ 35    During the pendency of this appeal, after the parties submitted their briefs, the Illinois Supreme Court decided *Ayres*, which is particularly applicable here. In *Ayres*, the State filed a petition to revoke the defendant's conditional discharge because the defendant left the state without the court's approval. *Id.* ¶ 3. The defendant admitted to the allegations. *Id.* After he was sentenced, the "defendant mailed a *pro se* petition to withdraw guilty plea and vacate sentence, alleging 'ineffective assistance of counsel.' " *Id.* ¶ 6. The defendant's attorney also filed a motion to reconsider sentence. *Id.* The circuit court denied the motion to reconsider, but did not consider or acknowledge the defendant's petition. *Id.* The appellate court found that "the four words 'ineffective assistance of counsel' without explanation or any supporting facts were insufficient to trigger the circuit court's duty to inquire." *Id.* ¶ 7.

¶ 36    On appeal, the supreme court noted the conflict among the appellate court districts "as to what is sufficient to trigger a *Krankel* inquiry." *Id.* ¶ 18. The court held that "when a defendant brings a clear claim asserting ineffective assistance of counsel, either orally or in writing, this is sufficient to trigger the trial court's duty to conduct a *Krankel* inquiry." *Id.* In doing so, the court stated that a claim does not need to be supported by facts or specific examples as "the primary purpose of the preliminary inquiry is to give the defendant an opportunity to flesh out his claim of ineffective assistance so the court can determine whether appointment of new counsel is necessary." *Id.* ¶ 20. The court further noted that its holding serves judicial economy as the preliminary inquiry would create a record for any claims raised on appeal and would not burden the circuit court. *Id.* ¶ 21.

¶ 37    In *Ayres*, the defendant only included the words "ineffective assistance of counsel" in his petition, and the supreme court held that was enough to require the circuit court to make a preliminary inquiry into the defendant's claim. Here, defendant raised an issue his counsel did not raise at trial (violation of his fourth and fifth amendment rights) and voiced that he did not understand his counsel's failure to raise the issue stating, "why [my attorney] never mentioned this during trial I do not know." His statement clearly raised an ineffective assistance of counsel issue that the circuit court should have addressed. Though defendant may not have used the words "ineffective assistance of counsel," requiring such would be elevating form over substance. Defendant brought a clear claim asserting ineffective assistance of counsel, both in writing and orally at sentencing, and the circuit court should have conducted a preliminary *Krankel* inquiry.

¶ 38    In coming to this conclusion, we reject the State's argument that defendant did not raise a "colorable claim" that his fourth amendment rights were violated. As stated above, defendant's claim of ineffective assistance of counsel does not have to be legally sound in order to trigger a preliminary hearing. *Id.* ¶ 11. The point of the preliminary inquiry is for the circuit court to give defendant an opportunity to flesh out his claim. *Id.* ¶ 20. It is only after the preliminary inquiry that the court determines whether or not defendant's allegations show possible neglect in order to require appointment of new counsel for a full *Krankel* hearing. *Moore*, 207 Ill. 2d at 77-78.

¶ 39    In sum, we uphold defendant's convictions as the circuit court did not abuse its discretion in admitting evidence of defendant's past conviction for rape. The evidence was enough to convict defendant, even absent considerations of the home invasion and residential burglary

convictions. "[W]e [further] hold the circuit court erred in failing to conduct any inquiry into the factual basis of defendant's allegations. Thus, we remand this cause to the circuit court for a preliminary *Krankel* inquiry." *Ayres*, 2017 IL 120071, ¶ 26.

¶ 40                                              CONCLUSION

¶ 41        The judgment of the circuit court of Peoria County is affirmed and remanded.

¶ 42        Affirmed and remanded.

¶ 43        JUSTICE McDADE, dissenting.

¶ 44        The majority affirms defendant's conviction, finding, *inter alia*, that the court did not err by admitting evidence of defendant's prior conviction for rape. I find it difficult to understand or agree with the majority's finding that the two rapes of which defendant has now been convicted were sufficiently factually similar to warrant admission of the first to show propensity to commit the second. Because there is no way to determine the extent to which the prior rape conviction drove the ultimate verdict in this case, I feel compelled to dissent from the majority decision. I have two concerns: (1) the so called similar factors found by the majority could be found in any rape and (2) the specific facts of the rapes, here, are not at all similar. Furthermore, I believe the erroneous admission of the prior rape conviction cannot be harmless as the court during a bench trial may be susceptible to the emotional impact provided by such a conviction. Moreover, our supreme court mandates a cautious consideration before admitting evidence of prior convictions of rape. I do not believe that such consideration was present here.

¶ 45        First, the factors on which the majority determines similarity would be present in virtually *any* rape. Indeed, they might constitute the definition of a large percentage of rapes. Allowance of prior bad acts to show propensity in sex offense prosecutions is the exception to the general rule excluding such evidence for that purpose. See *supra* ¶ 20. Using the criteria the majority has set out (*supra* ¶ 24) would, in my opinion, result in the exception swallowing the rule. The second and third factors (use of force and nonconsensual—either by direct refusal or legal incapacity to consent—sex) are present in most rapes; the first and fourth (uninvited entrance into the victims' home and adult women victims) are present in a great many. It would seem that the statutorily required "reasonable" and "factual" similarities (*supra* ¶ 23) should rest in the specifics of the two crimes, not in their generic character.

¶ 46        This gives rise to my second concern, which is that when we consider the specific facts of each crime pertinent to this prosecution, there is almost *no* similarity. The first incident was a gang rape. The victim was a 62-year-old woman. She was alone in the residence. Items were stolen from the premises. There is no suggestion there had been any interaction with the victim prior to the rape. There was no suggestion the victim had previously known or had contact with her attackers. She was penetrated both vaginally and anally. It appears her hair was cut off.

¶ 47        In significant contrast, the second rape was committed by a single actor. Although the victim was an adult, she was a very young woman (21 years old), and she was pregnant. The rape took place with her children in the house and one of them—a two-year-old—was actually in the room, trying to intervene. The defendant had earlier initiated non-physical interaction with the victim. He had approached her twice the preceding day, apparently attempting to "hit

- 10 -

on" her, and had appeared at her door the day of the rape. At that time, she had borrowed defendant's cell phone to make a call then turned away and shut the door. He entered without permission. She was penetrated only vaginally. Her hair was not cut off. There is, quite simply, no point of factual congruence between these two crimes except that both were rapes. Nothing about the first crime makes it a meaningful indicator of a likelihood that defendant was the person who committed the second.

¶ 48       The trial court found the compelling similarity to be "brazenness," but that is a subjective assessment, not a fact.

¶ 49       With regard to the 30 intervening years, I agree with the majority that the defendant's incarceration for 28 of those years is a significant factor. It is, however, not the only relevant consideration. Part of the reason for viewing other crimes committed in a more distant past with a jaundiced eye is a recognition that people can change over time. There is no real basis for concluding that defendant could not have changed in a positive way during 30 years of incarceration unless one prejudged him guilty of the second rape. So I still think the passage of that period of time is potentially significant.

¶ 50       The State was allowed—erroneously in my view—to present evidence of a totally dissimilar prior conviction to bolster its evidence. There can be no doubt that evidence was prejudicial, which is, of course, why the State wanted it admitted. If the evidence was wrongly admitted, the prejudice was both unnecessary and unfair. I would find the defendant should have a new trial.

¶ 51       There are two other points I would make. I acknowledge that this was a bench trial, not one tried to a jury. Although we presume that judges know and follow the law, they are human and we cannot also presume that they, as finders of fact, are less vulnerable to emotional manipulation than jurors. We cannot, therefore, find what I believe to be an erroneous admission of a prior conviction to be harmless.

¶ 52       Finally, I, too, would quote the supreme court's decision in *Donoho*:

> "Here, we find that the trial court's evaluation was not so ' "arbitrary, fanciful or unreasonable" ' [citation] as to constitute an abuse of discretion. Although 12 to 15 years elapsed, there were substantial factual similarities about the nature of the abuse sufficient to justify admission of the other-crimes evidence. In addition, we note that the trial court reduced the potential prejudicial effect of the evidence by refusing to allow the State to quote the 1983 statement or to publish the detailed two-page document to the jury. Therefore, we find that the appellate court erred by holding that because such evidence was admitted, defendant's convictions must be vacated and the matter remanded for a new trial. *Nonetheless, we urge trial judges to be cautious in considering the admissibility of other-crimes evidence to show propensity by engaging in a meaningful assessment of the probative value versus the prejudicial impact of the evidence.*" (Emphasis added.) *Donoho*, 204 Ill. 2d at 186.

¶ 53       I see no evidence of that cautious consideration in this case, and I can find insufficient factual similarity between the two sexual assaults to elevate the probative value of the earlier crime over its clear and substantial prejudicial impact. I would, therefore, find prejudicial error and find the defendant should have a new trial.