2020 IL App (1st) 172323-U

SIXTH DIVISION
December 11, 2020

No. 1-17-2323

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 15179 |
| | ) | |
| DASHONTI R. WILEY, | ) | Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court conducted no inquiry regarding defendant's *pro se* posttrial allegations of ineffective assistance of counsel, requiring remand for a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 2     Following a jury trial, defendant Dashonti Wiley was found guilty of first degree murder and sentenced to 55 years in prison. On appeal, Mr. Wiley's only claim is that the trial court failed to conduct any inquiry into his *pro se* posttrial claims of ineffective assistance of counsel. We agree and remand for a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Wiley was convicted of first degree murder for shooting and killing Keithen Rupert. As Mr. Wiley only challenges the trial court's failure to conduct a *Krankel* inquiry, we will focus on the facts necessary to decide this appeal.

¶ 5      This incident arose out of an encounter near East 156th Street and Myrtle Avenue in Harvey, Illinois, on the afternoon of July 18, 2013. The incident began when a woman named Tunisha confronted Mr. Rupert and his friend Deandre Boatman. Tunisha was angry because they were selling marijuana on the block on which she also sold marijuana. A man, who Mr. Boatman identified as Mr. Wiley, joined the confrontation and Mr. Boatman punched him. After the fight, Mr. Boatman and Mr. Rupert went to Mr. Rupert's house. They looked out of the window and saw Tunisha talking to someone in a white van. Mr. Boatman identified a photograph of the van.

¶ 6      Mr. Rupert and Mr. Boatman then went to the house of their friends Desmond and Deshawn Mayo. Mr. Boatman testified that while they were standing outside that house, the same white van drove past and stopped in an alley behind the house. A man got out of the van and fired a gun multiple times. A bullet struck Mr. Rupert in the back, killing him. In lineups conducted by Harvey police, Desmond and Deshawn identified Mr. Wiley as the shooter. The State introduced a Secretary of State registration document identifying Mr. Wiley as the owner of the white van that Mr. Boatman had identified in the photograph.

¶ 7      The jury found Mr. Wiley guilty of four counts of first degree murder.

¶ 8      The record on appeal contains a handwritten letter from Mr. Wiley dated August 19, 2017. That letter is file stamped as received by the clerk of the circuit court on October 3, 2017, which is after Mr. Wiley filed his notice of appeal. In this letter, Mr. Wiley requests the court grant "either a new trial or a complete overturn" of the verdict. Mr. Wiley states the "letter is not an effort to

undermin[e] [his] attorney ***, it[']s just [his] voice in which [he] regret[s] not defending [him]self in [his] jury trial." He identifies "several issues [he] wished to have been addressed in which [he] was informed that they may not have been a factor." These issues, as Mr. Wiley describes them in his letter to the court, are:

(1) " '[I]dentification' for starters I believe the officers at Harvey Police Department suggested me being the [perpetrator] in this crime by taking a photo of me prior to the initial line-up."

(2) "The photos used in trial of my van I truly believe were used to coach the witnesses in identifying my property which I know for a fact was not used in this murder case."

(3) "The credibilit[y] of [witnesses] should have been challenged."

(4) "The grand jury transcripts should have been scrutinized to the utmost."

(5) "[T]he van that was used in trial was seized illegally and that was proven in Civil litigation where as I received a settlement from the city of Harvey for the actions of the police officers directly associated with this murder case."

(6) "I was advised that the 'Fruit of a Poisonous Tree Doctrine' may not have had any barrings [*sic*] in my case but I wished it was brought forward as a matter of fact."

¶ 9    Mr. Wiley appeared for sentencing on September 14, 2017. During the sentencing hearing, the following exchange occurred:

"THE COURT: The defendant has the right of allocution. Do you wish to say anything, Mr. Wiley?

MR. WILEY: Yes. Can I ask a question?

THE COURT: No, you cannot ask any questions.

MR. WILEY: Well, no. I just want to state, I wrote you a letter, and I was wondering if you received my letter that I mailed to you.

THE COURT: There was a letter –

MR. WILEY: I attempted twice.

THE COURT: – that the Court received, and I did not open it. My intention was to give it to your attorney. So no. If you're asking me did I read any correspondence from you, the answer is no."

¶ 10    Mr. Wiley responded, "with regards to what I wrote initially was asking that, you know, that you granted a motion for a retrial because – if permitted, I can read the letter, but I know we're past this stage here."

¶ 11    Mr. Wiley then read aloud what he claimed was his second letter to the court. That letter is not part of the record on appeal other than through the transcript of Mr. Wiley reading it. In this letter, Mr. Riley said that he was not guilty, that he had been law abiding for many years, had a steady job as a plumber, a good marriage, and wished that he had not visited his sister the day of the incident so that he would not have been part of the initial confrontation and would not have been set up as the fall guy. In relevant part he claimed, "the witnesses *** were coached into making *** statements. There were issues that I wish could have been addressed concerning Harvey Police Department's suggestive identification, among other matter[s] in which my attorney, Bill Bolan, may wish to address." Mr. Wiley again requested a new trial. The court did not ask any questions of Mr. Wiley or his counsel and it made no findings regarding the issues he raised in either of the letters.

¶ 12    The court proceeded to sentencing, in which it merged three counts into count IV, first degree murder with personal discharge of a firearm that proximately caused death (720 ILCS 5/9-

1(a)(1) (West 2012)), and sentenced Mr. Wiley to 55 years in prison on that count.

¶ 13                                  II. JURISDICTION

¶ 14    Mr. Wiley's motion to reconsider his sentence was denied on September 14, 2017, and he timely filed his notice of appeal that same day. We have jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from final judgments of conviction in criminal cases.

¶ 15                                  III. ANALYSIS

¶ 16    On appeal, Mr. Wiley contends the trial court erred by failing to conduct a preliminary inquiry into his *pro se* posttrial claims of ineffective assistance of counsel as required by *People v. Krankel*, 102 Ill. 2d 181 (1984). He does not challenge his convictions or sentence.

¶ 17    Under *Krankel*, a defendant who raises *pro se* posttrial claims of ineffective assistance of counsel is entitled to have those claims heard by the trial court. *People v. Horman*, 2018 IL App (3d) 160423, ¶ 24. "Hearing those claims is a two-step process: (1) the circuit court makes a preliminary inquiry to examine the factual basis of the defendant's claim and (2) if the allegations show 'possible neglect of the case,' new counsel is appointed to represent the defendant in a full hearing on his *pro se* claims." *Id.* (quoting *People v. Moore*, 207 Ill. 2d 68, 78 (2003)).

¶ 18    In order to trigger a preliminary inquiry, " 'a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention.' " *People v. Ayres*, 2017 IL 120071, ¶ 11 (quoting *Moore*, 207 Ill. 2d at 79). "[A] defendant is not required to file a written motion *** but may raise the issue orally *** or through a letter or note to the court," and "a claim need not be supported by facts or specific examples." (Internal citations omitted.) *Id.* ¶¶ 11, 19. Moreover, a defendant need not use the exact phrase "ineffective assistance of counsel" to bring

such claims to the trial court's attention. See *People v. Lobdell*, 2017 IL App (3d) 150074, ¶ 37. As our supreme court recognized in *Ayres*, where the defendant is not clear what concern he or she is trying the raise, the court should conduct some "minimal inquiry" to determine what the defendant is complaining about. *Ayres*, 2017 IL 120071, ¶15.

¶ 19    If a defendant has raised a *pro se* claim of ineffective assistance, the trial court must then conduct an inquiry into the underlying factual basis. *Id.* ¶ 11. The trial court can conduct this inquiry in one of three ways: (1) asking counsel about the facts and circumstances related to the defendant's allegations; (2) having a brief discussion with the defendant; or (3) relying on the court's own knowledge of counsel's performance at trial and the insufficiency of the defendant's allegations on their face. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 22. But, in every case, "the court is required to conduct some inquiry to examine the factual basis of the defendant's claim." *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 36.

¶ 20    " 'The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel.' " *Ayres*, 2017 IL 120071, ¶ 13 (quoting *Moore*, 207 Ill. 2d at 78). We review whether a trial court properly conducted a *Krankel* inquiry *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 21    For the following reasons, we find that Mr. Wiley's two letters triggered the need for a preliminary *Krankel* inquiry. Since it is undisputed that no such inquiry was conducted, we must remand this case for the limited purpose of conducting such an inquiry.

¶ 22    In arguing that he triggered the need for a *Krankel* inquiry, Mr. Wiley relies in part on his August 19, 2017, letter, which is included in the record on appeal. In that letter, while Mr. Wiley states he does not mean to undermine his attorney, he also says that there are issues he wished had been addressed "in which [he] was informed that they may not have been a factor." He specifically

lists suggestive identification procedures and the challenges that should have been made to the credibility of witnesses. He also says that the grand jury transcripts should have been scrutinized "to the utmost" and illegal seizure of trial evidence should have been brought forward. Although this letter is not file-stamped as received by the circuit court clerk until October 3, 2017, both the State and Mr. Wiley agree that this is the letter that the trial court said that it had received but had not read when the parties were at the sentencing hearing on September 14, 2017. And although this letter does not specifically refer to counsel, Mr. Wiley argues that only counsel could have been expected to make the challenges that Mr. Wiley asserts were never made.

¶ 23    The State's first response is that "the trial court could not possibly be expected to make a *Krankel* inquiry based on an unopened letter." However, as Mr. Wiley points out, the court cannot avoid the obligation to make an appropriate *Krankel* inquiry by ignoring a letter that a defendant has sent. Before turning that letter over to counsel, which was appropriate, the trial court should have made at least the "minimal inquiry" suggested by *Ayers* to determine if Mr. Wiley was complaining in that letter about counsel's performance. 2017 IL 120071, ¶ 15.

¶ 24    In addition to this letter, there was a second letter that Mr. Wiley read aloud to the court at the sentencing hearing. In that second letter he claimed witnesses were coached and "[t]here were issues that I wish could have been addressed concerning Harvey Police Department's suggestive identification, among other matter[s] in which my attorney *** may wish to address." Mr. Wiley's allegation that suggestive identification procedures were not explored was also sufficient to trigger the court's duty to conduct some inquiry both into what that first letter had said and into what Mr. Wiley was complaining about.

¶ 25    The record is clear that the trial court did not any questions of Mr. Wiley or his counsel about his claims of ineffective assistance, and it did not make any findings about those claims

based on its own observations of trial counsel's performance. Instead, the court proceeded directly to sentencing. That was error. "The trial court cannot simply ignore or fail to address a claim of ineffective assistance of counsel without consideration of the claim's merits." *People v. Willis*, 2013 IL App (1st) 110233, ¶ 72.

¶ 26 The State argues that, even considering the content of both letters, Mr. Wiley failed to raise a "colorable claim" of ineffective assistance of counsel because he did not outright say his attorney was ineffective or cite specific claims of how his attorney was ineffective. However, as noted above, only counsel could have raised the various specific issues that Mr. Wiley asserted were ignored during his trial. Mr. Wiley did not need to support his claim with facts (*Ayres*, 2017 IL 120071, ¶ 11) or use the exact phrase "ineffective assistance of counsel" (*Lobdell*, 2017 IL App (3d) 150074, ¶ 37) in order to trigger the need for a preliminary *Krankel* inquiry.

¶ 27 The State also argues that the trial court's failure to conduct a *Krankel* inquiry was harmless because Mr. Wiley could not have established ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which our supreme court adopted in *People v. Albanese*, 104 Ill. 2d 504 (1984). This argument is premature. While it is appropriate for a trial court to consider the *Strickland* standard during *Krankel* proceedings (see *People v. Chapman*, 194 Ill. 2d 186, 231 (2000)), first the *Krankel* inquiry must occur. Here, the trial court conducted no *Krankel* inquiry, so there is no basis in the record from which we could determine whether or how the trial court considered the *Strickland* standard, much less whether Mr. Wiley could satisfy the *Strickland* standard on the merits.

¶ 28 The relief for the trial court's failure to determine the factual basis for Mr. Wiley's complaints about his trial counsel's performance is to remand this matter for the limited purpose

of conducting a preliminary *Krankel* inquiry. See *Ayres*, 2017 IL 120071, ¶ 26. During that inquiry, the court can determine whether Mr. Wiley's claims "show possible neglect of the case warranting appointment of counsel." *Willis*, 2013 IL App (1st) 110233, ¶ 134.

¶ 29                                  IV. CONCLUSION

¶ 30    For the foregoing reasons, we reverse and remand this case for a preliminary *Krankel* inquiry.

¶ 31    Reversed and remanded with directions.