2024 IL App (2d) 230493-U
No. 2-23-0493
Order filed November 14, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CM-635 |
| DAVID J. VINCENT, | ) ) | Honorable Joseph C. Pedersen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Kennedy and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Because the trial court failed to inquire into the factual basis of defendant's posttrial claim that his attorneys were ineffective, we remand for the court to make that inquiry.

¶ 2    Following a jury trial, defendant, David J. Vincent, was found guilty of two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2018)) and one count of interfering with the reporting of domestic violence (*id.* § 12-3.5(a)).  The trial court sentenced defendant to 18 months of conditional discharge and 60 days in jail, with credit for 60 days already served.  Defendant timely appealed.  Defendant contends that, because the trial court failed to inquire into

defendant's posttrial claims of ineffective assistance of counsel, as required under *People v. Krankel*, 102 Ill. 2d 181 (1984), the matter must be remanded for a proper inquiry. We agree and, thus, we remand.

¶ 3                                    I. BACKGROUND

¶ 4      On July 25, 2019, defendant was charged with domestic battery (based on bodily harm) (720 ILCS 5/12-3.2(a)(1) (West 2018)), domestic battery (based on insulting or provoking contact) (*id.* § 12-3.2(a)(2)), and interfering with the reporting of domestic violence (*id.* § 12-3.5(a)). The victim was defendant's girlfriend, Lona Rowland.

¶ 5      A jury trial took place on May 15, 2023. Two assistant public defenders—Brian Crowley and Mary Baccam—represented defendant. The following evidence was presented.

¶ 6      Rowland, 26 years old, testified that, on July 23 and 24, 2019, she lived in a Genoa apartment with defendant. They had begun dating in June 2017 and moved in together six months later. Their relationship ended in January 2021. According to Rowland, during the evening of July 23, 2019, she and defendant argued before she left for work. Defendant "was hitting [her] with a pillow, and [she] couldn't tell if he was joking, so [she] walked over to [defendant] to take the pillow away, and *** he struck [her] in the face and broke [her] glasses." Defendant then hit her with "a closed fist." She was "in disbelief, and [she] really couldn't react too much because [she] had to go to work." While at work, she texted with defendant, arguing over what had happened.

¶ 7      Rowland testified that her work shift ended at 6 a.m. the following day. She arrived home and saw a note that defendant had left, stating that he had removed the "cone" that she had put on their dog because the dog was scratching its neck. Defendant was not home at the time. Rowland wrote "eat shit" on the note and went to bed. She was almost asleep when defendant entered the

room and "started striking [her] in the arm." Defendant was hitting her with his fist while holding the note. He hit her "[a] couple times." Defendant walked into the kitchen, and Rowland followed him. They "started arguing and just yelling at each other." Defendant pushed Rowland into a door and struck her in the face multiple times. "[Defendant] punched [her] in the face, punched [her] in [her] ear, and then he put both hands on [her] and started choking [her]." She could "[b]arely" breathe. Rowland told defendant that she was going to call the police. Defendant ran into their bedroom and proceeded to "break [her] phone" by repeatedly "smashing" it with fingernail clippers. She tried to get her phone from defendant, and they began "tussling on the floor with the phone." Defendant "stood up, grabbed [her] by [her] hair, and start [*sic*] dragging [her] across the room." When she let go of the phone, defendant let go of her. Rowland could not hear out of her left ear, and the side of her face was red and swollen. She had rug burns on her knees and scratches on her elbow and shoulder.

¶ 8 Rowland testified that, after defendant let her go, she grabbed her car keys and phone and ran out of the house. She was not wearing shoes. She could not call 911 because her phone was broken. People's exhibit No. 1, which Rowland identified as a photograph of her cell phone with its "shattered" screen, was admitted into evidence. Rowland drove to the Genoa police station, but it was closed. On the premises was an emergency phone, which Rowland used to call 911. A recording of her phone call, admitted as People's exhibit No. 2, was played for the jury. After the call, EMTs and a police officer arrived. Rowland made a written statement.

¶ 9 Rowland testified that she next saw defendant three days later. She continued her relationship with him because she "felt bad" that she "got him in trouble." She "thought that [she] should have took [*sic*] the blame, that it was *** [her] fault." During the incident, she never hit defendant or acted like she would hit him.

¶ 10    On cross-examination, Rowland agreed that, during the 911 call, she did not mention that defendant choked her or pulled her hair and she stated that she did not have any blood on her. She did not go to the hospital. She agreed that she told the investigating officer about the note she left for defendant. She further acknowledged that she was angry with defendant when she spoke to the officer. Defense counsel showed Rowland a copy of her written statement. She further agreed that she wrote in the statement that she was "giving [defendant] shit for not touching [her]" and that she was "half joking but half not" when she said this to defendant. Rowland denied that she suspected defendant was cheating on her. She also acknowledged that she wrote in the statement that she "charged at [defendant]" when he was hitting her with the pillow. She agreed that she followed defendant into the kitchen the next morning to "confront him." However, she did not charge at him in the kitchen.

¶ 11    On redirect examination, Rowland stated that, when she "charged" at defendant, she intended to take the pillow from him, not to hit him. She clarified that, when she said that she was upset about defendant not touching her, she meant "sexually."

¶ 12    Zachary Wright testified that he was working in Genoa as a firefighter/paramedic on the morning of the incident. He was dispatched to the Genoa police station, where he encountered Rowland. She was not wearing shoes. She "had redness on the left side of her face, around her ear, as well as a few abrasions to her body." She complained of "muffled hearing." Rowland reported that "she had been assaulted by her boyfriend" and that "her boyfriend had broken her cell phone in an attempt to withhold her from dialing 911." On cross-examination, Wright testified that Rowland was not actively bleeding. She refused to go to the hospital, and he did not provide her with any "specific treatment."

¶ 13    Tim Hoffstead, a Genoa police officer, testified that he was dispatched to the Genoa police station on the morning of the incident. He saw Rowland, whom he had known "for many years," in an ambulance. She appeared to have been crying. Hoffstead knew Rowland to be "very reserved." When he spoke with her, she was "still really reserved." "[S]he was upset a little, her voice was a little shaky." Rowland's ear was "very bright red" and she had "a scratch or grab mark" from "the top of the shoulder to the armpit area on her arm." Hoffstead identified People's exhibit Nos. 3 and 4 as photographs he took of Rowland's injuries. Hoffstead also photographed Rowland's cell phone, which had a shattered screen. Hoffstead interviewed defendant that same day. Defendant was initially "calm" and "cooperative" but became "more upset, argumentative" when Hoffstead asked him what had happened. Defendant told Hoffstead: "I reported a domestic three months ago, and nothing gets done about it anyway." Hoffstead did not notice any "marks or injuries" on defendant. Hoffstead arrested defendant that day.

¶ 14    On cross-examination, Hoffstead testified that he knew defendant before the arrest. When Hoffstead was interviewing defendant, he mentioned "an incident [that] he reported against [Rowland]" three months before. Hoffstead did not follow up on defendant's claim regarding a "prior incident." Hoffstead saw marks on only Rowland's face and shoulder.

¶ 15    The State rested. Defendant moved for a directed verdict, arguing that the evidence showed that Rowland was the aggressor. The court disagreed and denied the motion. Defendant did not present evidence. The jury found defendant guilty of all three charges. The matter was set for sentencing on June 20, 2023.

¶ 16    On June 9, 2023, defendant filed a motion for a judgment notwithstanding the verdict and a separate motion for a new trial. In addition, defendant filed a motion to continue his sentencing

because he "wishe[d] to seek private counsel for representation at sentencing." The matter was continued several times thereafter.

¶ 17    A hearing eventually took place on August 28, 2023. Crowley represented defendant. At the outset of the hearing, the trial court asked defendant if he was "satisfied with the efforts that Mr. Crowley ha[d] made on [his] behalf." Defendant replied: "I'd say that Crowley has been more than satisfactory." Thereafter, the court heard argument on defendant's motions and denied them.

¶ 18    The matter proceeded to sentencing. The State agreed that the two domestic battery convictions would merge. On the remaining two counts, the State asked for concurrent 24-month terms of conditional discharge and 60 days in jail. In addition, the State asked that defendant be ordered to undergo a psychological evaluation and complete the Partner Abuse Intervention Program (PAIP). The State also asked that the trial court impose any fines, costs, and community service hours that it deemed appropriate and order that defendant have no contact with Rowland. Defense counsel asked that defendant be sentenced to 60 days' time served.

¶ 19    When the trial court told defendant that he could make a statement in allocution, defendant asked whether he could "ask a few questions before [he] ma[d]e a statement." The court told defendant that he was free to "ask [his] attorney some questions." Defendant responded, "Well, I mean, you might know better than my attorney." The court stated, "I'm the Judge. I'm not here to give you advice." Defendant replied that he knew that the court could not give him advice. The court then stated, "Right. So this is—no, you're not asking me questions." Defendant then made a statement in allocution, which included the following relevant comments.

> "And I—the question I was going to ask is if I can't get an appeal through you, there's no way I can go to an appellation [*sic*] court through a higher court system, I need to be informed of that by my attorney.

But at the same time, if that is possible and I'm informed of that by a higher court system at a later point in time, I would like everyone that is present to not be involved in said situation.

My court proceedings, there's nothing there that I can claim that was unethical, but it's (unintelligible) unethical by my situation.

It's not even about me at this point. Two of those witnesses were definitely forced into that situation, and [Rowland] felt she was coerced into that situation. Even if none of you felt it—made her feel that way and I didn't make her feel that way, that makes the trial unethical to me. She felt forced and uncomfortable.

And even my counselors who I'm most disappointed in did not handle that very correctly.

And I also think that it is unethical that that very day I'm introduced to Baccam, and there's no previous situation, and at the very last second I'm introduced to a counselor that I'm not familiar with at all.

It would be like if I met (unintelligible) that day on trial. It's very, very inappropriate to me."

¶ 20   Thereafter, the trial court sentenced defendant to 18 months of conditional discharge and 60 days in jail, with credit for time served. As a term of conditional discharge, defendant was to have no contact with Rowland. In addition, the court ordered defendant to participate in PAIP. The court also imposed various fines and costs.

¶ 21   On September 21, 2023, defendant filed a motion to reconsider his sentence. On October 27, 2023, the trial court granted the motion in part and removed the requirement that defendant attend PAIP.

¶ 22    This timely appeal followed.

¶ 23                              II. ANALYSIS

¶ 24    Defendant contends that his statement in allocution raised a claim of ineffective assistance of counsel and thus triggered the trial court's duty to inquire into the claim. He argues that, because the court failed to conduct the requisite inquiry, the matter must be remanded for the court to do so.

¶ 25    When a defendant brings a *pro se* posttrial claim that trial counsel was ineffective, the trial court must, under *Krankel*, adequately inquire into the claim and, under certain circumstances, appoint new counsel to argue the claim. *People v. Ayres*, 2017 IL 120071, ¶ 11; *People v. Craig*, 2020 IL App (2d) 170679, ¶ 12.

> "The purpose of the preliminary inquiry is to ascertain the underlying factual basis for the ineffective assistance claim and to afford a defendant an opportunity to explain and support his claim. In this way, the circuit court will have the necessary information to determine whether new counsel should be appointed to argue the claim of ineffective assistance of counsel." *Ayres*, 2017 IL 120071, ¶ 24.

If the defendant's allegations show possible neglect of the case, the court should appoint new counsel to argue the defendant's claim. *Ayres*, 2017 IL 120071, ¶ 11; *Craig*, 2020 IL App (2d) 170679, ¶ 12. However, if the court concludes that the defendant's claim lacks merit or pertains only to matters of trial strategy, the court may deny the claim. *Ayres*, 2017 IL 120071, ¶ 11; *Craig*, IL App (2d) 170679, ¶ 12. "If the court fails to conduct the necessary preliminary examination as to the factual basis of the defendant's allegations, the case must be remanded for the limited purpose of allowing the court to do so." *People v. Remsik-Miller*, 2012 IL App (2d) 100921, ¶ 9.

¶ 26    To trigger the trial court's duty to inquire, " '[a] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention.' " *People v. Bates*, 2019 IL 124143, ¶ 15 (quoting *People v. Moore*, 207 Ill. 2d 68, 79 (2003)).  The defendant may do so orally or in writing.  *Id.*  "[A]n express claim of ineffective assistance of counsel is all that is necessary to trigger a *Krankel* inquiry." *Ayres*, 2017 IL 120071, ¶ 21.  The defendant need not use the phrase " 'ineffective assistance of counsel,' " but the claim must be "clear." *People v. Lobdell*, 2017 IL App (3d) 150074, ¶ 37; see also *Craig*, 2020 IL App (2d) 170679, ¶ 17 (the defendant's statements were sufficient to trigger an inquiry where an ineffectiveness claim was clearly implied).  Whether the defendant's statement constituted an ineffectiveness claim sufficient to trigger the court's duty to conduct a preliminary inquiry under *Krankel* presents a question of law and, thus, is reviewed *de novo*. *People v. Taylor*, 237 Ill. 2d 68, 75 (2010).

¶ 27    Defendant contends that his statement in allocution at the sentencing hearing was sufficient to trigger the trial court's duty to inquire.  He maintains that the present case is an amalgam of *Ayres* and *Lobdell*.  We address each case in turn.

¶ 28    In *Ayres*, the defendant mailed a *pro se* petition to withdraw his guilty plea and vacate his sentence, alleging " 'ineffective assistance of counsel.' " *Ayres*, 2017 IL 120071, ¶ 6.  The claim did not include "additional support, factual allegations, or specific examples." *Id.* ¶ 16.  The supreme court held that the defendant's allegation of " 'ineffective assistance of counsel' " was sufficient to trigger the trial court's duty to inquire into the factual basis of the defendant's claim. *Id.* ¶¶ 9, 26.  The court emphasized that "[a] defendant need only bring his claim to the court's attention, *** whether orally or in writing." *Id.* ¶ 24.  Because the trial court never addressed the defendant's petition, the matter was remanded for a preliminary *Krankel* inquiry. *Id.* ¶ 26.

¶ 29    In *Lobdell*, the defendant, following his conviction but before sentencing, wrote a letter to the trial court, asserting that his warrantless arrest violated his constitutional rights. *Lobdell*, 2017 IL App (3d) 150074, ¶ 15. He also stated, " '[W]hy [my attorney] never mentioned this during trial I do not know, that[']s why I am mentioning it now [Y]our [H]onor.' " *Id.* ¶ 15. The defendant also read the letter at sentencing. *Id.* ¶ 16. The trial court made no inquiry. *Id.* ¶ 34. The Third District found that the defendant's letter raised an issue not presented at trial and indicated that he did not understand defense counsel's failure to raise it. *Id.* ¶ 37. The court determined that, although the defendant did not use the phrase " 'ineffective assistance of counsel,' " his statements clearly asserted such a claim. *Id.* To require the express phrase " 'ineffective assistance of counsel,' *** would [elevate] form over substance." *Id.*

¶ 30    Here, defendant expressed his desire to appeal and alleged that the trial court proceedings were "unethical by [his] situation." He alleged that "[t]wo of [the] witnesses were definitely forced into that situation" and that Rowland in particular "felt forced and uncomfortable." He stated that he was "most disappointed" in his attorneys, who "did not handle that very correctly." He further alleged that it was "unethical" and "very, very inappropriate" that he was introduced to one of his trial attorneys, Baccam, "at the very last second" and that he was "not familiar with [her] at all." He also stated that he "would like everyone that is present to not be involved" in an appeal.

¶ 31    In our view, defendant's comment that his attorneys "did not handle" certain issues concerning Rowland or other witnesses "very correctly"—such that he did not want those attorneys representing him on appeal—was clearly a complaint about their performance. Contrary to the State's suggestion, defendant's initial comment that he was pleased with Crowley's representation did not negate his subsequent complaints; rather, given the totality of defendant's remarks, the trial

court was required to confirm if and why defendant was displeased with his attorneys' performance.

¶ 32    The State responds that "[n]either situations from *Ayres* or *Lobdell*[ ] are present in this case."  According to the State, "[n]ot only did defendant never state that his counsel was ineffective, his general comments had no bearing on his counsel's performance."  The State's argument is unpersuasive.  First, as noted, a defendant need not expressly state that his counsel was "ineffective."  See *Lobdell*, 2017 IL App (3d) 150074, ¶ 37; see also *Craig*, 2020 IL App (2d) 170679, ¶ 17.  In addition, and as also noted, defendant's comments *were* complaints about his attorneys' performance.  Concerning his claims that "[t]wo of th[e] witnesses were definitely forced into that situation" and that Rowland "felt she was coerced," defendant said he was "disappointed" that his attorneys "did not handle that very correctly."

¶ 33    We are also not persuaded by the State's reliance on *People v. Jindra*, 2018 IL App (2d) 160225, and *People v. Cook*, 2023 IL App (4th) 210621.  Both cases are distinguishable.  In *Jindra*, the defendant filed a *pro se* posttrial motion based on the nonappearance of a witness and stated as follows:

> " 'I would like the judge to reconsider this case.  [T]he key witness, Brissa Cuphbertson [*sic*], did not appear in court, nor was her written statement submitted to the judge.  The public defender was Mr. Travis Lutz.  This eye witness [*sic*] is crucial to this defense.' "  *Jindra*, 2018 IL App (2d) 160225, ¶ 5.

We rejected the defendant's argument that these statements were sufficient to warrant an inquiry; instead, they "fell short of a clear claim of ineffective assistance of counsel."  *Id.* ¶ 15.  We noted that the "[d]efendant never stated, orally or in writing, that counsel was ineffective."  *Id.* ¶ 16.  We also emphasized that, "while [the] defendant did mention counsel in his motion, he did not

complain about counsel's performance." *Id.* ¶ 19. We noted further that the defendant did not "complain about counsel in his oral statements to the court." *Id.* Thus, we found that "it [was] unclear that [the] defendant, in fact, was complaining about counsel." *Id.* ¶ 16. His statements "could be subject to differing interpretations"; for instance, he "easily could have been hoping for the trial court to reopen the proofs in order to hear the witness." *Id.* ¶ 19.

¶ 34　　In *Cook*, the defendant argued that several complaints he made during testimony at a hearing on his motion to withdraw his guilty plea triggered a *Krankel* hearing,

> "namely that (1) he was coerced into his plea agreement because his case was delayed and 'nothing was moving forward,' (2) his plea attorney did not advise him about the pending statutory change concerning custodial statements made to police by a minor, and (3) no one helped him with his case." *Cook*, 2023 IL App (4th) 210621, ¶ 63.

The reviewing court rejected the defendant's claim. The court found that the defendant's first complaint was "flatly contradicted by the record," given that the defendant "entered his plea the very day he would otherwise have gone to trial." *Id.* ¶ 65. Regarding the second complaint, the court found that the "pending statutory change" was "not yet even introduced as a bill" until *after* the defendant entered his plea and that, in any event, the change would not have applied to his case. *Id.* ¶ 66. Finally, the court found that the third complaint was insufficiently "vague[ ]" because it provided no "hint of what help [the defendant] [felt] he was deprived of." *Id.* ¶ 67.

¶ 35　　Here, unlike in *Jindra* and *Cook*, defendant made a clear statement that his attorneys did not handle one or more witnesses "very correctly" and complained that he did not meet one of his attorneys until shortly before trial. He clearly referenced his attorneys and clearly indicated his dissatisfaction with their performance. To be sure, details were lacking, but defendant shaped his claim enough that the details could wait for the trial court's inquiry.

¶ 36    Based on the foregoing, we hold that the trial court erred in failing to conduct a preliminary examination into the factual basis of defendant's *pro se* claim of ineffective assistance of counsel. Accordingly, the matter must be remanded for that inquiry.

¶ 37                              III. CONCLUSION

¶ 38    For the reasons stated, we remand for the limited purpose of allowing the trial court to inquire into the factual basis of defendant's ineffective-assistance claim.  If defendant's allegations show possible neglect of the case, the court should appoint new counsel to argue defendant's claim of ineffective assistance.  However, if the court concludes that defendant's claim lacks merit or pertains only to matters of trial strategy, the court may deny the claim.

¶ 39    Remanded.