# Illinois Official Reports

## Supreme Court

*People v. Bates*, 2019 IL 124143

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. QUENTIN BATES, Appellant. |
| Docket No. | 124143 |
| Filed | November 21, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. John Schmidt, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Emily E. Filpi, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.<br><br>Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of Chicago, of counsel), for the People. |

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

Justice Neville took no part in the decision.


**OPINION**

¶ 1        Defendant Quentin[1] Bates was convicted of home invasion and two counts of aggravated criminal sexual conduct against the same victim. During his trial, the State introduced evidence of other aggravated criminal sexual conduct crimes that he allegedly committed. During the hearing for his motion for a new trial, defendant's retained counsel claimed that he was surprised at the depth of the evidence introduced regarding the other crimes and that counsel would have had that evidence tested by his own experts had he known the depth. We are called on to decide whether counsel's statements were an admission of ineffective assistance of counsel and whether such statements require the trial court to conduct an inquiry pursuant to this court's decision in *People v. Krankel*, 102 Ill. 2d 181, 189 (1984).

¶ 2                                    BACKGROUND
¶ 3        Defendant was arrested and charged in the circuit court of Sangamon County with home invasion, aggravated criminal sexual assault, and other crimes arising out of two separate incidents. The State alleged that, on September 19, 2011, defendant entered victim A.P.'s home and, armed with a knife, sexually assaulted her. The State also alleged that, on October 6, 2011, defendant entered victim C.H.'s home in a similar manner and, again armed with a knife, sexually assaulted her. Charges for both incidents were consolidated for pretrial proceedings. The same assistant public defender was appointed to represent defendant in both matters.

¶ 4        The State elected to try defendant for the assault of A.P. first and moved *in limine* to introduce other crimes evidence of the assault of C.H. pursuant to section 115-7.3(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3(b) (West 2012)). After that motion was granted, defendant retained private counsel for the trial regarding the assault of A.P. only. The public defender continued to represent defendant regarding the assault of C.H.

¶ 5        Prior to the trial for the assault of A.P., counsel moved for a continuance because he had "just received a copy of discovery materials from [the assistant state's attorney] and/or [the assistant public defender], which are voluminous." That motion was allowed. Defendant also moved the court to pay for him to retain a DNA expert to review the DNA testing conducted by the Illinois State Police, "which reports to show a match of Defendant's DNA with matter found on two women in [the case regarding A.P. and the case regarding C.H.]" At oral argument on that motion, counsel confirmed that the scope of the request "would include the

_____

[1]In some filings with the trial court, defendant's first name is spelled "Quenton." In his filings before this court, however, he lists his name as "Quentin."

evidence in [the case regarding the assault of C.H.]" That motion was granted, and the court authorized the expenditure.

¶ 6        Counsel also moved for reconsideration of the order permitting the State to introduce the other crimes evidence, arguing that defendant could not receive a fair trial "if evidence is allowed from matters derived from evidence in [the case regarding the assault of C.H.]" As late as the week before trial, counsel continued to argue that admission of evidence regarding the assault of C.H. "would be grievous error," that he would be successful on appeal, and that "we would have to start all over again." Despite his earlier request for funds to pay for an independent DNA expert to review Illinois State Police testing of "matter found on two women," he stated that "he would need to hire an expert to review those—the evidence in [the case regarding the assault of C.H.]" He later stated, at the Rule 402 plea conference (Ill. S. Ct. R. 402(d)(1) (eff. July 1, 2012)), that "[a]s far as the [case concerning the assault of C.H.], I'm not on that case so I'm not familiar with all of that—all the facts there, but I assume they're basically correct."

¶ 7        When the case advanced to trial, counsel indicated in his opening statement that he was not defendant's attorney regarding the assault of C.H. and that no defense expert had reviewed the State's report. He asked the jury to "consider that for what it's worth and that is not much. It's an accusation. He's not been through trial."

¶ 8        A.P. testified about her assault. The State also introduced testimony from police officers, a nurse, and a DNA expert. The DNA expert testified that defendant's DNA matched DNA from the semen found on the victim's body in 15 of 16 loci tested. Although the DNA found was not a direct match for defendant's DNA, the expert testified that he could not exclude defendant as the source of the semen and that he "would expect approximately one in 2.3 quadrillion whites, one in 840 trillion blacks, and one in 3.0 quadrillion Southwest Hispanics could not be excluded from the profile." Counsel cross-examined A.P. and the DNA expert. He cross-examined the crime scene investigator who collected evidence at both locations, but only to confirm that she merely collected, and did not test or process, that evidence. He did not cross-examine any other witness.

¶ 9        C.H. also testified about her assault. The State introduced testimony from other witnesses regarding that assault, including another DNA expert. This expert testified that the DNA recovered from the saliva found on C.H. matched defendant's DNA at all 16 loci tested, thus indicating a match for defendant. She testified that this profile "would be expected to occur in approximately one in 2.8 quintillion black, one in 53 quintillion white, or one in 270 quintillion Southwest Hispanic unrelated individuals." Other than the crime scene investigator, counsel did not cross-examine any witness regarding the assault of C.H.

¶ 10        The defense presented one witness, its own DNA expert, who testified that the DNA profile recovered from A.P. was not as conclusive as the State's expert testified. He highlighted the difference between a DNA match and a failure to exclude defendant's profile from the DNA found on A.P.'s body. He testified that multiple DNA profiles could not be excluded from the semen recovered from A.P.'s body and that defendant was but one of those profiles. He was not asked about, nor did he testify about, the DNA found in the saliva recovered from C.H.'s body. During closing argument, defense counsel asked the jury not to put much weight on the "case within a case," also stating that "[t]here's been no review by any DNA experts."

¶ 11    The jury found defendant guilty of home invasion and two counts of aggravated criminal sexual conduct, one each for oral and vaginal penetration of A.P. Defendant moved for a new trial. In that motion, counsel argued that the trial court erred in denying defendant's motion *in limine* to exclude the other crimes evidence and in granting a motion by the State to exclude evidence regarding A.P.'s sexual history. During the hearing on that motion, counsel stated that he was not defendant's attorney for the case resulting from the assault of C.H. He stated that, although he was generally aware of the allegations, he "couldn't possibly do as good a job in defending my client since it wasn't my case." He also stated that he "was taken by surprise at the depth of the evidence and testimony brought by the State's attorney, meaning, brought the victim—alleged victim, forensic scientists, I had no chance to review that. As [the court] know[s], had I been thinking about that case, I would have asked for review by our own experts." The trial court denied the motion, noting that it reviewed the motion and "had an opportunity to review my notes during the trial and the testimony and I remember it very well."

¶ 12    Defendant appealed, arguing that he did not receive effective assistance of counsel, that he was denied his constitutional right to confront witnesses against him, that he should have received a new trial because the State made improper statements in its closing argument, that the amount of other crimes evidence deprived him of a fair trial, and that the trial court erred when it failed to conduct a *Krankel* hearing. The appellate court affirmed. We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 13                                                    ANALYSIS

¶ 14    On appeal to this court, defendant argues only that the trial court erred when it failed to conduct a *Krankel* hearing. He argues that counsel's statements at oral argument for the motion for a new trial constitute an admission that he neglected defendant's case, such that a *Krankel* hearing was warranted and that the trial court erred in failing to conduct one. We first note that we review a trial court's alleged failure to inquire into whether defense counsel provided effective assistance *de novo*. *People v. Moore*, 207 Ill. 2d 68, 75 (2003).

¶ 15    When a criminal defendant believes that he has not received effective assistance of counsel at his trial and he so notifies the court, the court must inquire into his claim. *Krankel*, 102 Ill. 2d at 189. "[A] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." *Moore*, 207 Ill. 2d at 79. The defendant may do so by way of a written motion but need not do so in such a formal manner. *People v. Patrick*, 2011 IL 111666, ¶ 29. He may also make an oral motion (*People v. Banks*, 237 Ill. 2d 154, 213 (2010)) or give the court a letter or note (*People v. Munson*, 171 Ill. 2d 158, 200 (1996)). This court has even held that a *pro se* defendant need not provide the underlying factual basis for his claim so long as he alleges that he has received "ineffective assistance of counsel." *People v. Ayres*, 2017 IL 120071, ¶ 23. To raise a claim of ineffective assistance of counsel, however, the defendant must clearly raise that claim with the court. *Id.* ¶ 18.

¶ 16    Defendant argues that counsel admitted that he neglected defendant's case in his argument in support of his motion for a new trial. Specifically, defendant argues that counsel admitted that he failed to review the other crimes evidence and the State's discovery regarding the assault of C.H.

¶ 17    Counsel repeatedly asked the court to exclude the other crimes evidence. He mentioned it to the jury twice, telling them that they should take the accusations regarding C.H. for what

- 4 -

they were in his opening statement and asking them not to put much weight on those unproven allegations in his closing argument. He told both the court and the jury that he was not defendant's attorney regarding that matter.

¶ 18    The evidence regarding the assault of C.H. was much stronger than that regarding the assault of A.P. Although not confidently, C.H. picked defendant out of a lineup. A.P. could not do so. The DNA recovered from the saliva found on C.H. was a direct match for defendant. The semen found on A.P., on the other hand, only matched defendant's DNA at 15 of 16 loci. Although a strong probability still existed that it came from defendant, counsel could argue that it was not a match. The defense expert could testify that, despite the probability suggested by the numbers, matching only 15 of 16 loci was not a match and thus was not as conclusive as the State's expert suggested. He assumedly could not have so testified about the saliva found on C.H., which was a match to defendant, matching all 16 loci. We note that, both in the written motion and oral argument asking the court for funds to pay the defense expert, counsel indicated that he was seeking review of the reports regarding both victims.

¶ 19    In his motion for a new trial, counsel raised two issues: that the other crimes evidence was improperly admitted and that evidence regarding A.P.'s sexual history was improperly excluded. Regarding the other crimes evidence issue, he argued, consistent with his previous arguments, that he was not defendant's attorney for the allegations regarding C.H. and that he "couldn't possibly do as good a job in defending my client since it wasn't my case." The thrust of the motion and argument was that this evidence was improperly admitted. The court denied defendant's motion, noting that it made notes during trial, reviewed those notes upon defendant's motion, and remembered the trial "very well."

¶ 20    Defendant claims that the trial court should have treated counsel's statements at oral argument for his motion for a new trial as an admission of neglect and conducted a *Krankel* hearing. He claims that the First District of our appellate court has consistently held that the trial court has a duty to investigate a claim of ineffective assistance made by counsel.

¶ 21    The appellate court below noted, correctly, that this court "has never held that a *Krankel* hearing may be triggered by a defense counsel's representations in the absence of the defendant's *pro se* motion." 2018 IL App (4th) 160255, ¶ 102. It rejected defendant's argument that counsel had raised the issue of his own ineffectiveness, reaffirming Fourth District precedent and holding that " '*Krankel* and its progeny apply *only* to posttrial claims raised by a defendant *pro se*.' " (Emphasis in original.) *Id.* (quoting *People v. McGath*, 2017 IL App (4th) 150608, ¶ 49).

¶ 22    In *McGath*, defense counsel did not subpoena nor call an exculpatory witness that he believed would invoke the fifth amendment privilege against self-incrimination, and the defendant was convicted of unlawful delivery of a controlled substance. 2017 IL App (4th) 150608, ¶¶ 14-15. Counsel moved for a new trial, arguing, among other things, that the exculpatory witness could have testified that she delivered the controlled substance to the buyer without the defendant's knowledge or involvement. *Id.* ¶ 17. The defendant argued on appeal that counsel had alleged his own ineffectiveness when he stated that he failed to call the exculpatory witness. *Id.* ¶ 48. That court disagreed and held that the trial court may not hold a *Krankel* hearing absent a *pro se* posttrial claim of ineffective assistance of counsel. *Id.* ¶ 51.

¶ 23    As he did below, defendant relies heavily on *People v. Willis*, 2013 IL App (1st) 110233. In *Willis*, counsel moved for a new trial after the defendant was convicted of murder, alleging

that he was ineffective for failing to ensure that a material defense witness was available to testify. *Id.* ¶ 62. Instead of conducting a *Krankel* hearing, the trial court allowed counsel to withdraw the allegation. *Id.* The appellate court held that the trial court failed to adequately investigate the defendant's claim of ineffective assistance "as raised by his trial counsel in the posttrial motion" (*id.* ¶ 73) and remanded (*id.* ¶ 74).

¶ 24　　Defendant also cites *People v. Williams*, 224 Ill. App. 3d 517 (1992), and *People v. Hayes*, 229 Ill. App. 3d 55 (1992). In *Williams*, defense counsel brought a motion for a new trial after the defendant was convicted of murder and argued that he would have offered the testimony of several witnesses but for their unavailability. 224 Ill. App. 3d at 521-23. He also argued that he would have offered the testimony of another witness but for his mistaken belief that that witness's testimony would have been excluded as hearsay. *Id* at 522-23. On appeal, the defendant argued that the trial court erred in failing to conduct a *Krankel* hearing after counsel's statements. *Id.* at 523. That court agreed and remanded for a hearing. *Id.* at 523-24.

¶ 25　　In *Hayes*, the defendant was convicted of first degree murder following a bench trial. 229 Ill. App. 3d at 56. An issue regarding the defendant's mental competency existed, and defense counsel argued that the State had failed to prove its case "because it had not proven that defendant had the mental competency at the time of the incident to form an intent." *Id.* at 59. He moved for a new trial after conviction, stating that "the measure of proof for the insanity defense is 'very, very, very, very confusing.' " *Id.* at 60. Counsel had admitted that he was mistaken in his belief that the State had the burden of proving defendant's sanity beyond a reasonable doubt in his memorandum in support of the motion for a new trial. *Id.* at 61.

¶ 26　　The defendant in *Hayes* argued on appeal that counsel had been ineffective for the mistaken belief regarding the burden of proof and for failing to introduce evidence of defendant's insanity. *Id.* The defendant argued that the trial court should have appointed new counsel to argue those claims due to the conflict of interest that arose when counsel raised his own ineffectiveness. *Id.* at 64. That court implicitly found that an ineffective assistance claim was raised by counsel's statements before finding that the court "improperly denied defendant's request to present evidence or make an offer of proof regarding his mental condition in support of the ineffective assistance of counsel claim." *Id.* at 66.

¶ 27　　Defendant asserts that this court has also analyzed a claim of ineffectiveness raised by trial counsel, citing *People v. Sims*, 167 Ill. 2d 483, 517-20 (1995). In that case, counsel moved the trial court to reconsider its sentence after the defendant was sentenced to death, claiming that he gave erroneous legal advice to the defendant with respect to calling a psychiatrist to testify on the defendant's behalf. *Id.* at 518. The trial court denied that motion. *Id.* The defendant argued on appeal that the trial court should have appointed counsel to argue the motion. *Id.* This court found that the "defendant's claim raises a matter pertaining to a strategic decision" and that he "was not entitled to substitute counsel to argue the motion to reconsider." *Id.* at 520.

¶ 28　　In the case at bar, the appellate court below first disagreed with the rationale of *Willis* (2018 IL App (4th) 160255, ¶¶ 101-02) before also finding it distinguishable (*id.* ¶¶ 103-04). It did not address *Williams*, *Hayes*, or *Sims*. Instead, as stated above, it relied on *McGath*, 2017 IL App (4th) 150608, ¶ 49. 2018 IL App (4th) 160255, ¶ 102.

¶ 29　　We agree with the appellate court below that *Willis* is distinguishable. As noted by the *Willis* court, that case was unusual. *Willis*, 2013 IL App (1st) 110233, ¶ 69. The attorney in

that case explicitly claimed that he had been ineffective, then, upon reminder from the State that a conflict of interest prohibited him from arguing his own ineffectiveness, withdrew the allegation rather than disqualifying himself or allowing another attorney to argue it. *Id.* ¶ 62. Further, the defendant was not only a juvenile offender (*id.* ¶ 1), he was still a minor at the time of his trial (*id.* ¶ 70). Those facts are not before us today.

¶ 30     *Sims* is likewise distinguishable. The court in that case found that the defendant's claim of ineffective assistance of counsel raised a matter that involved strategy. *Sims*, 167 Ill. 2d at 520. This court did not reach the issue of counsel raising his own ineffectiveness.

¶ 31     *Williams*, *Hayes*, and *McGath* are more comparable to the case at hand. In those cases, like in this case, counsel made a claim in argument for a motion for a new trial that the defendant later asserted was counsel's admission of his own ineffectiveness. *Williams*, 224 Ill. App. 3d at 522-23; *Hayes*, 229 Ill. App. 3d at 60-61; *McGath*, 2017 IL App (4th) 150608, ¶ 48. In those cases, like here, counsel does not explicitly state that he was ineffective. In *Williams* and *Hayes*, the courts held that counsel's statements were sufficient admissions of ineffectiveness such that the trial courts should have conducted *Krankel* hearings. *Williams*, 224 Ill. App. 3d at 523-24; *Hayes*, 229 Ill. App. 3d at 66. In *McGath*, however, the court held that, because the defendant had failed to raise a *pro se* claim of ineffective assistance, "there was no reason for the trial court to conduct a *Krankel* hearing." 2017 IL App (4th) 150608, ¶ 52.

¶ 32     We agree with the holdings of *McGath* (*id.* ¶¶ 49-52) and the appellate court in this case (2018 IL App (4th) 160255, ¶ 102), as modified (see *infra* ¶ 33). To hold otherwise would be to subject the trial court to an unworkable standard requiring that it scrutinize every statement and action by counsel and perhaps even to inquire into privileged matters. Courts would have to question whether counsel's actions are strategies, which would potentially force them to inquire into privileged matters and perhaps sow seeds of doubt into a defendant's mind as to a strategy to which he previously agreed. Looking at counsel's actions in this case as an example, the record, including the trial and pretrial proceedings, suggests to us that counsel did not neglect the allegations regarding C.H. at all. Rather, it appears that he chose not to address them as a strategy. We decline to impose such a requirement on the trial courts.

¶ 33     In affirming the appellate court, we slightly modify its holding. We hold that the trial court is required to inquire into counsel's effectiveness only upon a clear claim of ineffective assistance by a *pro se* defendant or by an attorney at the defendant's direction. Thus, an attorney can raise the issue of his own ineffectiveness only if he does so clearly and at the direction of the defendant. He must also alert the court that he is raising the claim at the defendant's direction. To the extent they conflict with our decision today, we hereby overrule cases from our appellate court that hold that trial counsel can raise a claim of ineffective assistance of counsel without direction from the defendant, including *Williams*, 224 Ill. App. 3d at 523-24, and *Hayes*, 229 Ill. App. 3d at 66.

¶ 34     The remainder of defendant's arguments are premised on counsel's statement being an admission of neglect. Defendant did not *pro se* raise a claim of ineffective assistance. The record does not indicate that defendant directed counsel to make such a claim. The court was thus not required to hold a hearing or appoint counsel to argue such a claim. We therefore need not address defendant's other arguments.

## CONCLUSION

We hold that a claim of ineffective assistance of counsel must come from the defendant himself. An attorney may raise a claim of his own ineffectiveness only if he does so clearly and at the defendant's direction and informs the court that the defendant has instructed him to make such a claim.

Affirmed as modified.

JUSTICE NEVILLE took no part in the consideration or decision of this case.