NOTICE
Decision filed 07/14/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190129-U

NO. 5-19-0129

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Alexander County. |
| | ) | |
| v. | ) | No. 18-CF-22 |
| | ) | |
| KEVIN L. BANKS, | ) | Honorable |
| | ) | Jeffery B. Farris, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justice Cates concurred in the judgment.
Justice Wharton dissented.

**ORDER**

¶ 1    *Held*: Defendant's ambiguous statements in a letter attached to his PSI and at his sentencing hearing were insufficient to trigger a *Krankel* hearing.

¶ 2    Defendant appeals his conviction for aggravated battery with a firearm. On appeal, he contends his statements in a letter attached to his presentence investigation report (PSI) and statements in allocution at his sentence hearing triggered the trial court's responsibility to conduct a preliminary inquiry into defendant's alleged ineffective assistance of counsel claim pursuant to *People v. Krankel*, 102 Ill. 2d 181, 187-89 (1984). For the reasons that follow, we affirm.

1

¶ 3                                    BACKGROUND

¶ 4     Because the sole issue on appeal concerns defendant's statements made after his

conviction, we provide only the facts necessary to resolve this appeal and a brief summary

of the evidence at trial.

¶ 5     Defendant was charged by information with aggravated battery with a firearm

alleging he knowingly discharged a firearm and caused injury to Jaida Brown (Ms. Brown)

in the early morning hours of March 24, 2018, at the residence of Kiara Jackson (Jackson)

in Cairo, Illinois. In defense, defendant claimed he was at his residence in Wilson City,

Missouri, at the time of the shooting.

¶ 6     At the arraignment and bond hearing, defendant testified that he gave his cellphone

to the Cairo Police Department, which subsequently lost the cellphone. Defense counsel

indicated that the phone was pivotal to his defense. The court set a hearing on the matter

for May 24, 2018, noting "[losing the phone is] a pretty big deal." At the May 24 hearing,

a Cairo police officer confirmed that the police were unable to locate the phone.

¶ 7     On July 11, 2018, private counsel, Susan Burger, began representing defendant. She

filed a motion for sanctions listing three discovery violations. The motion first alleged that

defendant provided police with his phone that contained exculpatory evidence showing he

was not present at the location where shots were fired, but the police lost the phone. Second,

the motion alleged that the State searched Ms. Brown's phone but no evidence from her

phone had been turned over to defendant, except messages that were sent while defendant

was out on bond. Third, the motion alleged that the State failed to obtain a search warrant

for the phone of Jackson, who was present at the crime scene, which would also contain

2

evidence helpful to the defense. Because the police's loss of defendant's phone was attributable to the State and the State failed to disclose information regarding Ms. Brown's phone or obtain a warrant to search Jackson's phone, defense counsel argued the State deprived defendant of due process and requested dismissal of the charge.

¶ 8    At the hearing on defendant's motion for sanctions, defendant testified that the State seized a second phone that he possessed while out on bond. Defendant averred that the information on the second phone would be helpful because he logged onto his Google account, which should have retrieved any text messages and calls that were made on his previous phone. The State called the Cairo chief of police, Leonard Harris, to testify. The chief averred that in addition to physically looking for defendant's first phone, he also requested the phone service provider ping the phone, but the provider was unsuccessful in locating the phone. After listening to the parties' arguments, the court denied defendant's request to dismiss the charge. However, the court noted that it was willing to enter court orders to retrieve the phone records and any information that defendant's second phone may provide. At the following pretrial hearing, the State informed the court that it received the data from defendant's second phone and provided the information to defense counsel.

¶ 9    During trial, Jeff Knauer (Knauer) of the Illinois State Police Digital Crimes Unit testified for the State that he performed a physical extraction on defendant's second phone. The extraction obtained the entire contents of the memory of defendant's second phone and produced a report from that data which included Facebook Messenger entries, calendar entries, call log entries, and cell tower locations. He averred that the text messages and call

3

logs are specific to the device itself, so the data on the report was only from defendant's second phone. The data from defendant's first phone could not be retrieved.

¶ 10    The State also presented the two witnesses who were present at the time of the incident, Ms. Brown and Jackson. Both testified that sometime after Ms. Brown and Jackson entered Jackson's residence, Ms. Brown was on the phone with defendant. Defendant and Ms. Brown were arguing on the phone when defendant arrived at Jackson's residence. Once defendant was inside[1] and Ms. Brown informed defendant that she would not go outside with him, defendant pulled a gun out of his pocket. Ms. Brown and defendant struggled over the gun. While Ms. Brown and defendant wrestled over the gun, a shot was fired but Ms. Brown was not hit at that time. Eventually, the fighting stopped, and defendant went outside through the front door of the residence. After defendant went outside, a gunshot came through a window in the front of Jackson's residence and struck Ms. Brown. After several minutes, Jackson called 9-1-1. Other evidence presented at trial established that a 9-1-1 call regarding the shooting was placed at 5:18 a.m.

¶ 11    Jackson also testified that while she was at the police station to give her statement, defendant called her four or five times. She did not answer but Sheriff Tim Brown answered and talked to defendant on her phone.

¶ 12    Defendant testified in his defense. He stated that he and Ms. Brown were in a relationship and lived together in Wilson City, Missouri. He stated that on the night

---

[1]While not pertinent to this appeal, we note that there were a few discrepancies between Ms. Brown's and Jackson's testimonies. Specifically, their testimonies differed regarding who opened the door for defendant to come inside Jackson's residence and where Ms. Brown was located in the residence when defendant entered.

preceding the incident, he took Ms. Brown to Cairo under the impression that she was going to a party at her aunt's residence. Defendant averred that after no one appeared to be at her aunt's residence when he attempted to pick Ms. Brown up later, he went back to Wilson City. Defendant testified that once he was back at his residence, he contacted Ms. Brown and his sister through Facebook Messenger at 1:21 a.m. and 1:34 a.m., respectively. Defendant stated he fell asleep around 2 a.m. until approximately 4:11 a.m. when Jackson called him. Jackson continued to contact defendant several times, through his phone and Facebook Messenger. Defendant testified that once he was awake, he called Ms. Brown after noticing that Ms. Brown called and texted him. He informed Ms. Brown that he would not come to Cairo. Defendant averred he last spoke to Ms. Brown around 5:02 a.m. and again told her he was not coming to Cairo. On the phone call, defendant heard a "commotion" in the background and the phone went dead. Defendant testified he then tried to call Ms. Brown and Jackson to make sure everything was okay. He approximated that he called Jackson 16 times and that Jackson answered briefly once. Eventually, Sheriff Tim Brown answered Jackson's phone. Defendant testified that no one ever told him where Ms. Brown was, he did not know where Jackson lived, and he had never been to Jackson's house before.

¶ 13   After the defense rested its case, defense counsel renewed the motion for sanctions, arguing the evidence showed that certain information from defendant's first phone that would aid in proving defendant's alibi that he was not in Cairo the morning of the shooting, was missing. After the parties made their arguments, the court allowed defense counsel to confer with defendant. Defense counsel then informed the court that the defense would rely

on the call log and wished to withdraw the renewal of the motion for sanctions. The court found defendant guilty.

¶ 14 Subsequently, defendant wrote a letter to the court, which was attached to his PSI. The letter stated, in part:

"I pray that you find it in your heart to give some leaniance [*sic*] in my sentencing because I have children and a [*sic*] ageing [*sic*] Mother who are dependent on me for help.

I wish that certain things could have been done that I asked for during the case (i.e. phone pinging) but my lawyer claims that they can't do it. I am not a professional in that area but I do know where I was at that time.

All that I ask is that you would at least consider that there is a possibility that what I'm saying is true, during sentencing."

¶ 15 At the sentencing hearing, the court acknowledged receipt of defendant's letter and confirmed it reviewed the letter. Defendant also made the following statement in allocution:

"A person can't help what another person says about them. They can only defend themselves to the best of their ability. My only defense was, is that I was at home when that crime was committed in a whole another state. I asked for permission to have my phone pinged and stuff like that, and it came down to a question of amount of money. I gave law enforcement the phone numbers of my phone and Ms. Brown's phone so they can show, if they pinged them, the locations of those phones. None of that was ever done due—because of

6

money or whatever the reason was. We're not here—you know, really here to discuss that, but I'm just putting it out there that I tried to come up with some type of defense to show that I was where I was when I told them where I was at.

\*\*\*

So, I mean, a man can only do so much in his defense, but at the end of the day, in previous crimes I always pled guilty to because I done those crimes. But I refuse to plead guilty to a crime that I did not commit. I don't care who says it. I have the right to stand here and say that I did not do it and that is what I'm doing today. Thank you, Your Honor."

¶ 16    The court sentenced defendant to 25 years' imprisonment with a 3-year term of mandatory supervised release. This appealed followed.

¶ 17                              ANALYSIS

¶ 18    The only issue on appeal is whether the trial court erred in failing to conduct a *Krankel* hearing based on defendant's written statements in his letter which were attached to the PSI and his statements provided at his sentencing hearing, regarding the cellphone evidence.[2]

¶ 19    When a defendant asserts a posttrial claim of ineffective assistance of counsel to the court, the court must inquire into the claim to determine whether new counsel should be

---

[2]We note that there is conflict among the appellate courts regarding whether *Krankel* applies to privately retained attorneys. See *People v. Taylor*, 237 Ill. 2d 68, 78 (2010) (Burke, J., specially concurring) (explaining the conflict). However, we do not address this issue because neither party raises the issue on appeal and the resolution of this appeal does not require such.

appointed. *People v. Krankel*, 102 Ill. 2d 181, 189 (1984); *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). "A *pro se* defendant is not required to do any more than" bring a clear claim of ineffectiveness to the "court's attention," which can be done orally or through a written statement to the court. (Internal quotation marks omitted.) *People v. Ayres*, 2017 IL 120071, ¶ 11. While providing the underlying factual basis of the claim is unnecessary to sufficiently trigger a *Krankel* inquiry, the defendant "must clearly raise that claim with the court." *People v. Bates*, 2019 IL 124143, ¶ 15. If a defendant fails to present a clear claim of ineffective assistance of counsel, the trial court' s duty to conduct a preliminary *Krankel* inquiry is not triggered. *People v. Taylor*, 237 Ill. 2d 68, 76 (2010). We review whether the defendant's statements were sufficient to trigger a *Krankel* inquiry *de novo*. *Moore*, 207 Ill. 2d at 75.

¶ 20     Defendant contends that he made a clear posttrial *pro se* claim asserting ineffective assistance of counsel, both orally and in writing. Citing to *People v. Lobdell*, 2017 IL App (3d) 150074, ¶ 37, he explains that although he did not explicitly use the phrase "ineffective assistance of counsel," his complaint of counsel's failure to ping his cellphone was implicit in his letter attached to the PSI and his statement in allocution. Defendant's statements were directed toward his counsel who he was paying to defend him. Defendant argues that because he stated that counsel failed to "ping" his phone to show his location for monetary reasons, in addition to the fact that his alibi defense depended on pinging his phone, he presented a clear claim of ineffective assistance of counsel that warranted a *Krankel* inquiry. We disagree.

8

¶ 21    In *Lobdell*, defendant wrote a letter to the court before sentencing that stated police officers violated his fourth and fifth amendment rights when arresting him, including some detail of the violation, and that " 'why [my attorney] never mentioned this during trial I do not know, that[']s why I am mentioning it now your honor.' " *Lobdell*, 2017 IL App (3d) 150074, ¶ 15. On appeal, defendant complained, *inter alia*, that the trial court erred in failing to conduct a *Krankel* hearing. *Id.* ¶ 32. The Third District reversed, determining that defendant's statement raised an issue not presented at trial and explained that he did not understand counsel's failure to do so. *Id.* ¶ 37. Although defendant did not state the phrase "ineffective assistance of counsel," it determined his statements clearly asserted such a claim. *Id.* To require the express phrase " 'ineffective assistance of counsel,' *** would [elevate] form over substance." *Id.*

¶ 22    While we agree with the legal principles expounded in *Lobdell*, we find the statements in this case are more like those in *People v. Jindra*, 2018 IL App (2d) 160225. The defendant in *Jindra* filed a motion that stated: " 'I would like the judge to reconsider this case. the [*sic*] key witness, Brissa Cuphbertson [*sic*], did not appear in court, nor was her written statement submitted to the judge. The public defender was Mr. Travis Lutz. This eye witness [*sic*] is crucial to this defense.' " *Id.* ¶ 5. The Second District found that while defendant mentioned counsel, it was unclear whether defendant was, in fact, complaining about counsel's performance. *Id.* ¶ 19. It further noted that defendant's statements were subject to differing interpretations, and "[h]e easily could have been hoping for the trial court to reopen the proofs in order to hear the witness." *Id.*

¶ 23 Here, defendant mentioned his counsel only in a written letter to the court in that counsel informed him that his request to "ping" his phone could not be done. In his statement in allocution, defendant also asserted that his phone could not be "pinged" because of monetary reasons. Therefore, unlike *Lobdell*, defendant's statements indicated that counsel explained why defendant's request could not be completed. Defendant provided no indication—at any time—that counsel was mistaken or untruthful. Nor did he ever assert that he believed such information could have been obtained. Accordingly, we find, like the statements in *Jindra*, defendant failed to make a clear complaint regarding counsel's performance. "Defendant's characterization of his statement as an 'implicit claim of ineffective assistance of counsel' is an acknowledgment of this point." *Taylor*, 237 Ill. 2d at 76. Because defendant failed to present a clear claim of ineffective assistance of counsel, the trial court's duty to conduct a *Krankel* inquiry was not triggered. *Jindra*, 2018 IL App (2d) 160225, ¶ 19 (citing *Ayres*, 2017 IL 120071, ¶ 18 (a defendant's "clear claim asserting ineffective assistance of counsel, either orally or in writing, *** is sufficient to trigger the trial court's duty to conduct a *Krankel* inquiry")).

¶ 24 Moreover, defendant's statements were subject to more than one interpretation. Reading defendant's letter—as a whole—in conjunction with his full statement in allocution, defendant's statements more resemble a complaint regarding police action, and could be easily interpreted as a hope that the court would reconsider the dismissal of the charge or would be lenient in sentencing based on defendant's inability to prove his alibi due to the police's error in losing his first phone. Under such circumstances, a *Krankel*

10

inquiry is not required. *Taylor*, 237 Ill. 2d at 77; *Jindra*, 2018 IL App (2d) 160225, ¶ 19; *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 26.

¶ 25                              CONCLUSION

¶ 26    For the foregoing reasons, we find defendant failed to present a clear claim of ineffective assistance of counsel and the trial court was not required to conduct a *Krankel* inquiry. We therefore affirm defendant's conviction.

¶ 27    Affirmed.

¶ 28    JUSTICE WHARTON, dissenting:

¶ 29    I disagree with the majority's conclusion that the defendant did not present the trial court with a clear claim of ineffective assistance of counsel. I reach this conclusion because the defendant indicated in his statements that counsel failed to do something the defendant alleges could have led to exculpatory evidence. Because I believe this is adequate to trigger the court's duty to conduct a preliminary *Krankel* inquiry, I respectfully dissent.

¶ 30    The majority correctly notes that a trial court's duty to conduct a preliminary inquiry under *Krankel* is only triggered when the defendant clearly raises the issue of counsel's performance with the court. *Bates*, 2019 IL 124143, ¶ 15. In determining whether this standard has been met, we must not elevate form over substance. See *Lobdell*, 2017 IL App (3d) 150074, ¶ 37. Thus, a defendant does not need to explicitly label his claim as one of ineffective assistance of counsel. *Id.* Similarly, I do not believe it is necessary for a defendant to explicitly state he is dissatisfied with counsel's performance. Rather, I believe

11

it is sufficient for a defendant to alert the court that counsel failed to do something that should have been done.

¶ 31     The majority finds the defendant's statements in this case to be similar to those of the defendant in the Second District's decision in *Jindra*. I disagree. In *Jindra*, the defendant filed a *pro se* motion, asking the court to reconsider his case and asserting that a "key witness" (Brissa Cuthbertson) did not testify. *Jindra*, 2018 IL App (2d) 160225, ¶ 5. Significantly, although the defendant told the court who his attorney was in the motion, he did not make any allegations concerning counsel's performance. See *id.* ¶¶ 5, 16. He did not allege that counsel failed to call the witness; he alleged only that she "did not appear" and that her written statement was not presented to the court. *Id.* ¶ 5. At a subsequent hearing, the defendant told the court, " 'New information is supplied by *** Brissa Cuthbertson.' " *Id.* ¶ 7. He further stated, " 'She'll come tomorrow, if you ask her. She says it was a mistake. She didn't think she was supposed to show up last week.' " *Id.* When considered in light of these comments, it seems unlikely that the defendant in *Jindra* intended to complain about counsel's performance. It was against this background that the Second District concluded the defendant's *pro se* motion did not clearly indicate that he was raising a possible claim of ineffective assistance of counsel.

¶ 32     I find the instant case far more analogous to the Second District's subsequent decision in *People v. Craig*, 2020 IL App (2d) 170679. There, the defendant was convicted of multiple charges involving the sexual abuse of his nieces and nephew. *Id.* ¶¶ 3-4. At issue were statements made by the defendant that appeared in the presentence investigation

12

report (PSI). The probation officer who prepared the PSI noted that the defendant maintained his innocence. *Id*. ¶ 8. The probation officer wrote the following in the PSI:

> " '[Defendant] stated that his lawyer did not have his niece or his mother come to court to testify on his behalf. He stated that his niece was taking care of these kids (his brother's children) and he was never at his niece's house and the kids told the niece that [defendant] never did anything.' " *Id*.

At the sentencing hearing, the trial court stated that it had considered the PSI. *Id*.

¶ 33    On appeal, the defendant argued that the court erred by failing to conduct a preliminary *Krankel* inquiry. In response, the State argued that the defendant did not clearly bring a claim of ineffective assistance of counsel to the attention of the trial court. *Id*. ¶ 11. The Second District concluded that the court's duty to conduct a preliminary *Krankel* inquiry was triggered by the statements in the PSI. *Id*. ¶ 18.

¶ 34    There were two components to the court's holding. First, the appeals court found that because the record affirmatively established that the trial court read the PSI, the defendant's statements about his attorney were deemed to have been "presented to the court." *Id*. ¶¶ 18-19. Second, in considering whether the substance of these statements was sufficiently clear enough to trigger a *Krankel* inquiry, the Second District found that the defendant's statements in the PSI were "more like those in *Lobdell* than those in *Jindra*." *Id*. ¶ 17. The court explained, "Like the statements in *Lobdell*, the statements in the PSI attributed to [the] defendant *specifically refer to counsel's failure to do something*. In *Lobdell*, it was a failure to raise certain claims; here it is the failure to call a witness." (Emphasis added.) *Id*. Here, as in both *Craig* and *Lobdell*, the defendant stated that his

13

attorney failed to do something. Specifically, he stated that his attorney failed to obtain evidence that he believed would have been exculpatory.

¶ 35    The majority distinguishes this case from *Lobdell* because the defendant's statements in this case indicate that his attorney provided an explanation for why the defendant's request could not be fulfilled, unlike the statements involved in *Lobdell*. The majority then notes that the defendant did not allege that counsel's explanation was erroneous or untruthful. I find this to be a distinction without a difference. The defendant here stated in his letter that his attorney "*claims* they can't" do what the defendant requested (emphasis added). The defendant then noted that he is "not a professional." These comments indicate that the defendant does not know whether his attorney's explanation has merit.

¶ 36    It is worth emphasizing that a defendant's claim of ineffective assistance of counsel does not need to be legally sound to trigger a court's duty to conduct a preliminary *Krankel* inquiry. *Lobdell*, 2017 IL App (3d) 150074, ¶ 38. The purpose of the inquiry is to give the defendant an opportunity to elaborate on his allegations so that the trial court can determine whether those allegations show possible neglect of the case. *Id.* Consistent with these principles, the defendant here should be allowed to flesh out his claim so that the trial court can determine whether his allegation shows possible neglect of his case by defense counsel. He should not be precluded from doing so merely because he is not a professional and does not know whether to question the judgment of his attorney.

14

¶ 37 For these reasons, I would find that the defendant's statements in this case were clear enough to trigger the trial court's duty to conduct a preliminary *Krankel* inquiry. I would reverse and remand this case to allow the court to do so.