2022 IL App (2d) 210483-U
No. 2-21-0483
Order filed August 31, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-1201 |
| REINALDO ALONSO CORONA, | ) ) ) | Honorable Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hudson and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court fulfilled its duties under *People v. Krankel* where (1) one of defendant's ineffectiveness claims did not implicate trial counsel's performance and, thus, the court had no duty to conduct a *Krankel* inquiry; and (2) the trial court's inquiry into the remaining ineffectiveness claims was sufficient to establish their lack of merit.

¶ 2    Following a jury trial in the circuit court of Kane County, defendant, Reinaldo Alonso

Corona, was found guilty of a single count of predatory criminal sexual assault of a child (720

ILCS 5/11-1.40(a)(1) (West 2018)) and three counts of aggravated criminal sexual abuse (*id.*

§§ 11-1.60(c)(1)(i), 11-1.60(d) (2018)).  The court sentenced defendant to a six-year prison term

for predatory criminal sexual assault of a child and a three-year prison term for each count of aggravated criminal sexual abuse. The sentences for aggravated criminal sexual abuse were to be served concurrently with one another, but consecutively to the sentence for predatory criminal sexual assault of a child. Defendant argues on appeal that the trial court did not conduct an adequate inquiry into his *pro se* claims of ineffective assistance of counsel. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     Defendant was represented at trial by two attorneys: Michael Combs and Todd Cohen. J.G., who was born on March 22, 2006, testified for the State that in May 2019, she attended a family party at the home of her cousin, M.A., to celebrate M.A.'s confirmation. J.G. slept over at the party in M.A.'s bedroom. There were several adults at the party including defendant, who was born in 1989. J.G. testified that at some point she woke up and found defendant with one hand on her thigh and the other on her chest. He was trying to squeeze her breast over her clothes. When he saw that she was awake, he left the room. About a week later, she told her French teacher what had happened.

¶ 5     M.A. testified that she was born on February 22, 2005. She recounted an incident that occurred when she was about eight years old. She and her family lived in St. Charles at the time. Defendant, who was a cousin, also lived with the family. Defendant took M.A. into his bedroom, where he removed her clothes, touched inside and around her vagina with his fingers, and touched and tried to squeeze her breasts.

¶ 6     Before the close of the State's case-in-chief, the trial court advised defendant that he had the right to testify, that no one could prevent him from doing so, and that the decision to testify was his and his alone. Defendant confirmed that he understood those rights and that he had enough time to consult with his attorneys about his decision whether to testify. However, he accepted the

trial court's offer for more time to consult before making his final decision.  After a recess, the following exchange occurred between the trial court and defendant:

> "THE COURT: ***
>
> So, sir, we've had a little break here and I want to go over your right to testify or not testify.  We went over that pretty thoroughly before the break and you asked for a little bit more time to talk to your attorneys.  Have you had enough time to talk to them about that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And what is your decision, sir?
>
> THE DEFENDANT: I'm not going to testify."

¶ 7    The State's last witness was J.G.'s French teacher, Julia Thornton.  Thornton testified that in May or June of 2019 she had a conversation with J.G.  Thornton relayed the conversation to J.G.'s school counselor.  Thornton and the counselor then made a report of suspected abuse to the Department of Children and Family Services.

¶ 8    The defense rested without presenting any evidence.  The jury returned a guilty verdict on all counts.  The matter was continued for sentencing, and a presentence investigation report (PSI) was prepared.  As pertinent here, the PSI stated, "[Defendant] maintains his innocence in this case. He said he wanted to testify and his attorneys did not allow him."

¶ 9    Combs was present at the sentencing hearing.  Cohen was not.  Defendant spoke in allocution, stating, *inter alia*, "I am not guilty.  I didn't do what I am accused of.  I would like to see if you could give me another opportunity so I could defend myself that my attorney did not defend me the way I thought, because he did not present witnesses."

¶ 10    Before pronouncing sentence, the trial court expressed concern about both defendant's statement in the PSI that (1) his counsel did not allow him to testify and (2) in his statement in allocution, counsel did not present witnesses. Regarding defendant's statement in allocution, the trial court asked defendant what he wanted "another opportunity" to do. Defendant responded, "Another opportunity, another trial, a new trial with a new jury, because as a part of the jury, I would like Hispanic jurors because there were only American jury members in that jury."

¶ 11    The trial court then asked Combs to address defendant's statement in allocution that counsel did not present any witnesses. Combs replied as follows:

> "Illinois law does not allow me to call a witness to say that they never saw [defendant] abuse children. That's improper character evidence, and I did explain that to him. I can't bring in witnesses to say, 'I know him, and I have never seen him touch a child.' That doesn't disprove the allegations in the indictment. And I had that conversation with him. So that's all I would say about that."

The trial court asked Combs whether defendant named any specific witnesses whom he wanted Combs to call. Combs replied, "No."

¶ 12    Concerning defendant's statement in the PSI that counsel did not allow defendant to testify, the trial court remarked that it recalled having advised defendant that it was his decision whether to testify and that defendant confirmed that he had decided not to testify. The trial court asked Combs to respond to defendant's allegation that he was not allowed to testify. Combs replied, "Judge, Mr. Cohen and I specifically discussed that with him, and you discussed it with him in open court on the record. So, no, I have nothing to say about that." The trial court then had the following exchange with Combs:

"THE COURT: And I recall that maybe I gave you more time to go out in the hallway to talk to him about that again.

MR. COMBS: Yes. Correct, Judge, you did.

THE COURT: So you talked about that with him; is that correct, Mr. Combs?

MR. COMBS: Yes, as did Mr. Cohen.

THE COURT: And that was ultimately your client's decision, correct?

MR. COMBS: Correct."

Shortly thereafter, defendant addressed the trial court, stating, "I talked to [Cohen] about me being able to testify, and we agreed that I was going to testify on that day, and [Cohen] told me that I didn't have to say anything at all, that everything was okay." The trial court reminded defendant that it had given him a long time to talk with his attorneys about the decision to testify. Defendant responded, "That's why we went out. I just wanted to make sure the way I was going to talk to the jury."

¶ 13    The trial court concluded that neither of defendant's attorneys had neglected the case. The trial court then imposed sentence, and this appeal followed.

¶ 14                                II. ANALYSIS

¶ 15    Defendant argues on appeal that he advanced *pro se* posttrial claims of ineffective assistance of counsel and that, as a result, the trial court was obligated to conduct an inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny to determine whether to appoint new counsel to represent defendant on those claims. Defendant claims the inquiry conducted by the trial court was deficient.

¶ 16    In *People v. Moore*, 207 Ill. 2d 68, 77-79 (2003), our supreme court explained the *Krankel* procedure as follows:

In [*Krankel*,] the defendant's trial counsel failed to contact an alibi witness or to present an alibi defense at trial. The defendant raised a *pro se* posttrial challenge to his attorney's competence at trial. The parties agreed that the trial court should have appointed counsel, other than his originally appointed counsel, to represent defendant at the posttrial hearing regarding his claim of ineffective assistance. This court remanded the matter for a new hearing on the defendant's motion with newly appointed counsel. [Citation.]

In interpreting *Krankel*, the following rule developed. New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed. [Citations.] The new counsel would then represent the defendant at the hearing on the defendant's *pro se* claim of ineffective assistance. [Citations.] The appointed counsel can independently evaluate the defendant's claim and would avoid the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to defendant's position. [Citations.]

The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. [Citation.] During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any,

is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. [Citations.]"

¶ 17    The *pro se* allegations need not appear in a formal written motion. "[A] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." *Id.* at 79. The defendant may raise the claim orally or in a letter or a note. *People v. Bates*, 2019 IL 124143, ¶ 15. Additionally, a defendant's statements in a PSI may obligate the trial court to conduct a *Krankel* inquiry. *People v. Craig*, 2020 IL App (2d) 170679, ¶ 18. However, failure to conduct a proper *Krankel* inquiry will be deemed a harmless error if the record positively rebuts the defendant's *pro se* claim of ineffective assistance of counsel. *People v. Palomera*, 2022 IL App (2d) 200631, ¶¶ 63-64 (claim that the defendant was coerced to waive his right to a jury trial was positively rebutted by the record, which showed that, before accepting the waiver, the trial court twice asked the defendant whether anyone was forcing him to waive his jury right and the defendant indicated that he was not being forced and that he believed a bench trial was his best choice).

¶ 18    We turn to defendant's arguments. He first contends that the trial court failed to conduct a proper *Krankel* inquiry into his complaint that there were no Hispanics on the jury. According to defendant, his complaint is "reasonably read" as a claim that his right to a jury drawn from a fair cross-section of the community was violated, "and by implication, a claim that trial counsel was ineffective for failing to challenge the venire on those grounds." The State disputes that

implication. According to the State, defendant's complaint about the jury was not related to counsel's performance and, therefore, did not trigger the duty to conduct a *Krankel* inquiry. We agree with the State.

¶ 19    To trigger the trial court's duty to conduct a *Krankel* inquiry, a defendant " 'does not need to explicitly label his claim as one of ineffective assistance of counsel' " and does not need to " 'explicitly state he is dissatisfied with counsel's performance.' " *In re Johnathan T.*, 2022 IL 127222, ¶ 53 (quoting *People v. Banks*, 2021 IL App (5th) 190129-U, ¶ 30 (Wharton, J., dissenting)). Nonetheless, the defendant must " 'clearly raise[] the issue of counsel's performance with the court.' " *Id.* In cases cited by the State, courts refused to characterize the defendants' claims as ones of ineffective assistance of counsel where the defendants did not mention counsel. *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 68 ("Typically, a defendant must at least mention his attorney in connection with his complaints for them to be considered ineffective assistance of counsel claims."); *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 31 ("[F]or a defendant to make a clear claim of ineffective assistance of counsel, the defendant must at least mention his attorney." (Internal quotation marks omitted)). Accord *People v. King*, 2017 IL App (1st) 142297, ¶ 18 (reference to a witness who did not testify was not a "clear claim asserting ineffective assistance of counsel." (Internal quotation marks omitted)).

¶ 20    Defendant argues that, unlike the cases cited by the State, "[his] claim arose in the context of his complaining about counsel's performance." Defendant insists that he "brought his complaint about the racial composition of the jury to the trial court when asked by the court why he wanted 'another opportunity,' which moments earlier he had said he wanted due to his attorney's ineffectiveness." In the earlier statement, however, defendant was quite specific that his grievance against counsel stemmed from counsel's failure to call witnesses. We see no basis

for expanding the scope of that specific claim of ineffective assistance of counsel. Here, although defendant complained that there were no Hispanic jurors, he did not link his complaint to counsel's performance. Accordingly, that complaint did not trigger a duty to conduct a *Krankel* inquiry.

¶ 21    Defendant next challenges the adequacy of the *Krankel* inquiry into his claim that counsel did not present witnesses. The trial court asked Combs about that allegation and Combs explained that he told defendant that Illinois law did not permit him to call witnesses to testify that they never saw defendant abuse children. Combs stated that he told defendant that that would be improper "character evidence." Defendant argues that, "[w]hile counsel's statement that he explained to [defendant] that he could not present improper character evidence implies that those were the only witnesses [defendant] told counsel about, counsel never explicitly stated that was the case." Defendant argues that the trial court therefore should have asked defendant whether he provided the names of any specific witnesses to his attorneys and what their testimony would have been.

¶ 22    Defendant ignores Combs's express statement that defendant did not identify any specific witnesses he wanted to call. In any event, under the circumstances here, the distinction between what Combs implied and what he expressly stated is of no consequence. Combs's statement to the trial court did, indeed, imply that there were no witnesses who could give admissible evidence favorable to defense. Combs surely understood that implication, and he would be guilty of a lie by omission if he knew such witnesses existed. As an officer of the court, Combs had a duty to be honest and forthright in his dealings with the court. See *Semmons v. Semmons*, 77 Ill. App. 3d 936, 940 (1979). When questioning defense counsel as part of a *Krankel* inquiry, a trial court is entitled to rely on counsel to fulfill that ethical duty. Accordingly, the trial court's exchange with Combs was a sufficient basis for the trial court to conclude that there was no merit to defendant's complaint about the failure to call witnesses.

¶ 23    In his reply brief, defendant mischaracterizes the argument in his opening brief. Defendant contends that he argued that "[defendant's] claim involved conversations [he] had with his two attorneys outside of court, only one of those attorneys was present for the *Krankel* inquiry, and the court only ascertained, from the attorney present, that [defendant] had not provided a list of witnesses to *that* attorney." (Emphasis in original.) Thus, according to defendant, the trial court should have asked defendant whether he provided a list of witnesses to his other attorney. That is an entirely new argument; nowhere in his opening brief did defendant suggest that he might have discussed certain witnesses with Cohen but not Combs. It is well established that "an appellant forfeits points not raised in the initial brief and cannot argue them for the first time in the reply brief." *Sellers v. Rudert*, 395 Ill. App. 3d 1041, 1046 (2009); see also Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Accordingly, we do not consider the argument.

¶ 24    Finally, defendant contends that the trial court did not conduct an adequate *Krankel* inquiry into his claim that counsel did not permit him to testify. Defendant contends that Combs's statement that he discussed the right to testify with defendant did not contradict defendant's claim. Contrary to defendant's argument, however, Combs not only indicated that he had discussed the right to testify with defendant, but Combs also confirmed the trial court's statement that it "was ultimately [defendant's] decision."

¶ 25    According to defendant, his statements during the *Krankel* hearing "imply that he *** wanted to testify and needed more time to discuss his testimony with his attorneys." Defendant argues that the trial court should have asked defendant for clarification. Be that as it may, any error in the failure to do so was harmless because the record positively rebuts defendant's claim. See *Palomera*, 2022 IL App (2d) 200631, ¶¶ 63-64. *People v. Palmer*, 2017 IL App (4th) 150020, is instructive. In that case, the defendant filed a *pro se* postconviction petition claiming that he

was deprived of the effective assistance of counsel when trial counsel refused to allow him to testify. The *Palmer* court affirmed the summary dismissal of the petition. In doing so, the *Palmer* court distinguished cases cited by defendant on the basis that "none of them involve[d] a circumstance where the defendants' allegations were positively rebutted by the record." *Id.* ¶ 22 The *Palmer* court explained:

> "Essentially, defendant's overarching premise is that he was denied his constitutional right to testify. The record contradicts that assertion. After the first day of trial, the trial court (1) admonished defendant regarding his right to testify, (2) encouraged defendant to speak with defense counsel for advice, and (3) specifically told defendant, 'ultimately, it's your decision to make as to whether you testify or not.' The next day, after the State rested and it was time for defendant to present his evidence, the court admonished defendant at length regarding his right to testify. The court again reminded defendant that the decision to testify belonged solely to him. The court stated, 'Do you understand it's your decision to make as to whether you testify or you don't?' Defendant responded, 'Yes.' Throughout the admonishments, the record demonstrates no equivocation or misunderstanding on defendant's part as he waived his right to testify, nor did defendant bring his concerns to the attention of the trial court at any time during the proceedings." *Id.*

¶ 26 Here, defendant was advised by the trial court of his right to testify and was told that the decision to do so was his and his alone. Defendant acknowledged that he understood. Defendant confirmed that he had spoken with his attorneys about testifying and accepted the trial court's offer for more time to consult with his attorneys. After defendant did so, the trial court specifically asked defendant "what is *your* decision, sir?" (Emphasis added.) Defendant responded, "I'm not going to testify." Just as the record in *Palmer* positively rebutted defendant's postconviction claim

that counsel did not allow him to testify, the record here positively rebuts defendant's *pro se* posttrial claim (as reflected in the PSI) that counsel did not allow him to testify.

¶ 27                                    III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 29    Affirmed.